[No. B016363. Second Dist., Div. Two. Sept. 5, 1986.]

DOROTHY MEYER, Plaintiff and Appellant, v.
JACOB CARNOW, Defendant and Respondent.

COUNSEL

Leon P. Gilbert, Gregory J. Kaapuni and Alan C. Messarra for Plaintiff and Appellant.

Dummit & Agajanian and Judith A. Zipkin for Defendant and Respondent.

OPINION

**ROTH, P. J.**—As authorized by Code of Civil Procedure section 1294, subdivision (a), Dorothy Meyer appeals from the superior court's order denying her petition to compel Dr. Jacob Carnow to arbitrate her medical malpractice claim. We reverse and remand for further proceedings.

The salient facts are undisputed. In 1978, Meyer was a patient of Dr. Carnow, a podiatrist.

On April 21, 1978, the parties executed a "Treatment and Arbitration Agreement." It provides, in pertinent part: "In the event of any controversy between the PATIENT . . . and the ATTENDING PODIATRIST . . . involving a claim in tort or contract the same shall be submitted to arbitration. Within fifteen (15) days after the PATIENT or ATTENDING PODIATRIST shall give notice to the other of demanding arbitration of such controversy, the parties to the controversy shall each appoint an arbitrator and give notice of such appointment to the other. Within a reasonable amount of time after such notices have been given the two arbitrators so selected shall select a neutral arbitrator and give notice of the selection thereof to the parties. The arbitrators shall hold a hearing within a reasonable time for [*sic*] the date of notice of selection of neutral arbitrator. All notices or other papers required

to be served shall be served by the United States mail. Except as provided herein the arbitration shall be conducted in accordance with and governed by the provisions of Title 9 of the California Code of Civil Procedure. The patient may withdraw from the arbitration portion of this agreement within thirty (30) days from the date of this agreement by notification of this intent to do so to the ATTENDING PODIATRIST by registered mail."

On April 25, 1978, Dr. Carnow performed surgery on Meyer's left toe. Meyer remained under Dr. Carnow's care until June 1981.

In January 1983, Meyer consulted another physician who told her that Dr. Carnow's surgery and followup treatment were below the standard of care.

In August 1983, counsel for Meyer sent Carnow a letter captioned "Demand for Arbitration." It stated, in part: "Demand is hereby made for Arbitration . . . with respect to the medical service treatment, and care negligently rendered by you . . . [to Meyer] from on or about April 21, 1978 to on or about July 30, 1981 . . . [¶] Please select an arbitrator to act on your behalf in this matter and inform us of your choice. [¶] Take notice that should you refuse to arbitrate this matter, [Meyer] shall take further steps to effect arbitration according to law."

Dr. Carnow's insurance adjuster commenced investigation of the claim and ultimately informed Meyer's attorney in November 1984 of its belief that she had no valid claim.

In December 1984, Meyer commenced litigation in the superior court to compel Dr. Carnow to submit to arbitration. She relied upon Code of Civil Procedure section 1281.2 which holds, in pertinent part: "On the petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: (a) The right to compel arbitration has been waived by petitioner; or (b) Grounds exist for the revocation of the agreement."

Dr. Carnow opposed Meyer's petition urging it was governed and barred by the statute of limitations applicable to medical malpractice actions, Code of Civil Procedure section 340.5, because Meyer sought arbitration of a claim of professional negligence. That statute provides that an action must be commenced ". . . three years after the date of injury or one year after

the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."

Utilizing either provision of the statute, Dr. Carnow urged Meyer's December 1984 motion to compel arbitration was untimely. That is, he claimed in the alternative that the three year limit had begun in April 1978 when Dr. Carnow performed the surgery so that it had run in April 1981 or that the one year limit had commenced in January 1983 when another physician advised Meyer of the malpractice and it had expired in January 1984.

The trial court accepted Dr. Carnow's argument and denied Meyer's petition to compel arbitration. This appeal followed.

■ California has a public policy of a long standing nature in favor of arbitration over litigation as a method to settle disputes because it is expeditious, inexpensive, avoids the delays of litigation, and relieves overburdened courts. (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178].) This policy favoring arbitration extends to its use in settlement of medical malpractice claims. (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 356 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].)

The statutory scheme governing judicial enforcement and review of arbitration provisions and awards is found in Code of Civil Procedure section 1280 et seq. Significantly, these statutes do not contain any statute of limitations about the bringing of an action seeking judicial enforcement of an agreement to arbitrate. The only explicit statutory restriction is found in subdivision (a) of Code of Civil Procedure section 1281.2, which states a court may decline to order arbitration if a party has waived its right to compel arbitration.

Meyer errs in urging that the question of whether there is any statute of limitations applicable to an action to compel arbitration is a question of first impression. ■ Our independent research has disclosed that in *California State Auto. Assn. Inter-Ins. Bureau* v. *Cohen* (1975) 44 Cal.App.3d 387, 393-395 [118 Cal.Rptr. 890], the Court of Appeal held that the applicable statute of limitations is the one governing actions on a written contract. The court, surveying decisional law from other jurisdictions, reasoned that because the party's right to arbitrate arose out of a contract (an insurance policy), that Code of Civil Procedure section 337, which establishes a four year statute of limitations for actions upon "any contract, obligation or liability founded upon an instrument in writing," should apply. We agree.

As Meyer's right to compel arbitration arises out of the written agreement executed with Dr. Carnow, it therefore follows that she has a four-year limit

in which to commence litigation to compel arbitration. ■ This conclusion is also consistent with case law that arbitration is a matter of contract (*King* v. *Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 357 [175 Cal.Rptr. 226]) and that an action to compel arbitration is, in essence, an action to compel specific performance of a contract. (*La Pietra* v. *Freed* (1978) 87 Cal.App.3d 1025, 1030 [151 Cal.Rptr. 554] and cases cited therein).

Other jurisdictions adopting this view have further concluded that the contract statute of limitations does not commence until the cause of action to compel arbitration arises and that such right does not accrue until there has been a demand to arbitrate and a refusal to submit to arbitration. (Annot., Statute of Limitations As Bar to Arbitration Under Agreement (1979) 94 A.L.R.3d 533, 540-542.) At bench, it is uncontradicted that Meyer made her demand in August 1983 and that Dr. Carnow refused the request in November 1984. Thus, the lawsuit filed in December 1984 was timely.[1]

In view of this analysis, Dr. Carnow's reliance upon the statute of limitations applicable to medical malpractice lawsuits is misplaced. Meyer is not seeking to invoke the jurisdiction of a judicial forum to litigate the merits of a malpractice claim but rather seeks from the superior court an order that Dr. Carnow abide by a contract he signed. The statute of limitations applicable to a judicial action to compel arbitration should not be dependent on how the claim for which arbitration is sought is characterized. Indeed, the language of the arbitration clause at bench makes clear that its provisions apply either to a tort claim (e.g., malpractice) or to a contract claim (e.g., an action for money for services rendered) arising out of the doctor-patient relationship. Hence, utilizing the four-year period found in Code of Civil Procedure section 337 will ensure consistency of decision in regard to judicial enforcement of promises to arbitrate.

■ ■ ■ ■ However, the statute of limitations merely defines the outside time limits in which an action to compel arbitration must be initiated. (See Annot., Delay in Asserting Contractual Right to Arbitration as Precluding Enforcement Thereof (1969) 25 A.L.R.3d 1171.) As noted earlier, Code of Civil Procedure section 1281.2 permits a trial court to deny the request if the party seeking arbitration has waived its right thereto.[2] The

---

[1]The 15-month hiatus was caused by Dr. Carnow's investigation of the merits of Meyer's claim. We are somewhat puzzled by this as nothing in the arbitration agreement provides for such an investigation prior to arbitration; instead, the question of the merits of the claim would seem to be a matter for the arbitrator to resolve.

[2]The courts have found waiver of the right to demand arbitration in the following situations: (1) when a party has unreasonably delayed in commencing proceedings to compel arbitration; (2) when the party seeking arbitration has previously acted inconsistently with an intent to invoke arbitration; and (3) when a party has acted in bad faith or engaged in wilful misconduct. (*Davis* v. *Blue Cross of Northern California* (1979) 25 Cal.3d 418, 425-426 [158 Cal.Rptr. 828, 600 P.2d 1060], and cases cited therein.)

issue thus posed is whether Meyer waived her right by not asserting it earlier.

Significantly, the agreement contained no provision stating a time frame for either party to request arbitration. ■ "Where an arbitration agreement does not specify a time within which arbitration must be demanded, a reasonable time is allowed, and what constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case." (*Sawday* v. *Vista Irrigation Dist.* (1966) 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816]; accord *Martinez Typographical Union* v. *Silversun Corp.* (1967) 256 Cal.App.2d 255, 260 [63 Cal.Rptr. 760]; *A. D. Hoppe Co.* v. *Fred Katz Constr. Co.* (1967) 249 Cal.App.2d 154, 161 [57 Cal.Rptr. 95, 25 A.L.R.3d 1162].)

As the trial court erroneously concluded that application of Code of Civil Procedure section 340.5 mandated denial of Meyer's petition to compel arbitration, it did not take evidence and rule upon the factual question of whether there had been a waiver. In fairness to the parties, it should be given the opportunity to do so. In deciding whether Meyer has acted in a timely fashion, the superior court can, by analogy, look to the provisions of Code of Civil Procedure section 340.5 to the extent the statute demonstrates the Legislature's determination of what, given its concern about a major statewide health crisis, is a reasonable time in which to file a lawsuit based upon a claim of medical malpractice. (See *Steketee* v. *Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 55-56 [210 Cal.Rptr. 781, 694 P.2d 1153].)[3]

The order denying the petition to compel arbitration is reversed and the trial court is directed to resume proceedings in accordance with the views expressed herein.

Beach, J., and Gates, J., concurred.

---

[3]We are not insensitive to the fact that to a certain extent this opinion can be construed as undermining the time limitations imposed by MICRA on bringing medical malpractice lawsuits. In the trial court, neither party introduced any evidence of legislative intent on the question of whether MICRA was intended to embrace the situation discussed herein. As a consequence, we limit our disposition and reversal to the question of waiver.