[No. B058473. Second Dist., Div. Seven. May 27, 1992.]

BOYS CLUB OF SAN FERNANDO VALLEY, INC., Plaintiff and Appellant, v.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant and Respondent.

COUNSEL

John R. Fuchs for Plaintiff and Appellant.

Peterson & Ross and Steven Ray Garcia for Defendant and Respondent.

OPINION

LILLIE, P. J.—Boys Club of San Fernando Valley, Inc. (Boys Club) appeals from an order denying its petition to compel Fidelity and Deposit

Company of Maryland (Fidelity) to take part in an arbitration between Boys Club and McLaughlin Construction, Inc. (McLaughlin).[1]

## Factual and Procedural Background

In January 1985 Boys Club and McLaughlin entered into a written contract whereby McLaughlin agreed to construct a recreation facility for Boys Club for $1,268,980 (the contract). The contract contained an arbitration clause requiring the parties to arbitrate "[a]ll claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof. . . ."

In February 1985, pursuant to the contract, McLaughlin obtained a performance bond in the sum of $1,268,980 from Fidelity with McLaughlin as principal, Fidelity as surety and Boys Club as obligee. The bond referred to the contract and made it a part of the bond by reference. The bond provided that if McLaughlin were declared by Boys Club to be in default under the contract Fidelity could remedy the default, complete the contract itself, or have the work done by someone else.

After the facility was completed Boys Club complained of defects in construction and withheld final payment on the ground McLaughlin had failed to perform the contract in a workmanlike manner. In March 1988 Boys Club filed a demand for arbitration against McLaughlin. In January 1991 Boys Club filed an amended demand for arbitration naming Fidelity as an additional party to the arbitration and defining the dispute to be arbitrated as "breach of contract, negligence, professional negligence and claim against Bond No. 61-06-492 [the performance bond]." Fidelity filed in the arbitration proceeding its limited response to the amended demand wherein Fidelity alleged that it was not a party to the contract and did not sign an agreement to arbitrate. In the limited response Fidelity reserved its right to continue to resist Boys Club's attempt to make it a party to the arbitration.

In February 1991 Boys Club petitioned the superior court for an order compelling Fidelity to join the ongoing arbitration between Boys Club and McLaughlin. The petition alleged that Fidelity agreed to arbitrate with Boys Club disputes regarding the performance bond by reason of incorporation of the contract, including the arbitration clause, into the bond. Fidelity opposed the petition arguing: (1) it is not a party to the contract which contains the arbitration provision; and (2) Boys Club's right to make Fidelity a party to

---

[1] An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).)

the arbitration is barred by time limits contained in both the arbitration provision and the performance bond.

The trial court denied the petition to compel arbitration "pursuant to the responding points and authorities." Boys Club appeals from the order denying the petition.

## DISCUSSION

### I

■ The right to arbitration depends on a contract. (*Fontana Teachers Assn.* v. *Fontana Unified School Dist.* (1988) 201 Cal.App.3d 1517, 1521 [247 Cal.Rptr. 761]; Code Civ. Proc., § 1281.2.)[2] Accordingly, a party can be compelled to submit a dispute to arbitration only where he has agreed in writing to do so. (*Berman* v. *Renart Sportswear Corp.* (1963) 222 Cal.App.2d 385, 388 [35 Cal.Rptr. 218].) ■ While arbitration is a favored method of resolving disputes, the policy favoring arbitration cannot displace the necessity for an agreement to arbitrate (*Victoria* v. *Superior Court* (1985) 40 Cal.3d 734, 738-739 [222 Cal.Rptr. 1, 710 P.2d 833]) and does not extend to those who are not parties to such an agreement. (*Rhodes* v. *California Hospital Medical Center* (1978) 76 Cal.App.3d 606, 609 [143 Cal.Rptr. 59].) Whether or not an arbitration agreement is operative against a person who has not signed it involves a question of "substantive arbitrability" which is to be determined by the court. (*Unimart* v. *Superior Court* (1969) 1 Cal.App.3d 1039, 1045 [82 Cal.Rptr. 249].)

An agreement need not expressly provide for arbitration, but may do so in a secondary document which is incorporated by reference. (*Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 639 [223 Cal.Rptr. 838].) ■ A contract performance bond will be read with the contract because " '. . . when a party enters into a contract to do certain work on certain terms, and procures a surety to guarantee the faithful performance of the work, the surety necessarily contracts with reference to the contract as made; otherwise it would not know what obligation it was assuming. And this is particularly so where the bond expressly declares that the contract is

---

[2] Code of Civil Procedure section 1281.2 provides in pertinent part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for revocation of the agreement. . . ."

made a part of the bond and the terms of the contract are incorporated into the bond. . . .' " (*Pacific Employers Ins. Co.* v. *City of Berkeley* (1984) 158 Cal.App.3d 145, 150 [204 Cal.Rptr. 387].)

 Our research discloses no California authority which combines the foregoing principles to hold that the surety in a performance bond is bound by an agreement to arbitrate contained in a construction contract or subcontract to which the surety was not a party but which is incorporated into the bond by reference. However, several federal cases so hold. (E.g., *USF & G* v. *West Point Const. Co., Inc.* (11th Cir. 1988) 837 F.2d 1507; *Exchange Mut. Ins. Co.* v. *Haskell Co.* (6th Cir. 1984) 742 F.2d 274; *Transamerica Premier Ins.* v. *Collins & Co.* (N.D.Ga. 1990) 735 F.Supp. 1050; *Hoffman* v. *Fidelity and Deposit Co. of Maryland* (D.N.J. 1990) 734 F.Supp. 192; *Cianbro Corp.* v. *Empresa Nacional de Ingenieria* (D.Me. 1988) 697 F.Supp. 15.) The rationale of these cases is exemplified in *USF & G* v. *West Point Const. Co., Inc., supra,* 837 F.2d 1507: "The subcontract was referred to and made a part of the bond. Disputes arising under the contract, including disputes concerning the adequacy of Pruett's [subcontractor] performance, were subject to arbitration pursuant to the arbitration provisions of the subcontract. We conclude that the incorporation of the subcontract into the bond expresses an intention of the parties, including USF & G [surety], to arbitrate disputes. Our conclusion is supported by the strong policy favoring arbitration expressed by Congress in the Federal Arbitration Act [9 United States Code section 1 et seq.]." (*Id.,* at p. 1508, fn. omitted.)

 California, likewise, has a strong public policy in favor of arbitration as a speedy and relatively inexpensive method of resolving disputes. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 322 [197 Cal.Rptr. 581, 673 P.2d 251].) Further, "arbitration, as defined both in the federal statute and our state statute, is a procedure for resolving disputes which arises from contract; it only comes into play when the parties to the dispute have agreed to submit to it." (*Herman Feil, Inc.* v. *Design Center of Los Angeles* (1988) 204 Cal.App.3d 1406, 1414 [251 Cal.Rptr. 895].) Under the arbitration provision in the contract the parties are required to arbitrate disputes regarding the sufficiency of McLaughlin's performance under the contract. The performance bond obligates Fidelity to complete the contract, or procure a contractor to do so, if McLaughlin is declared to be in default under the contract. Accordingly, Fidelity's duty to perform under its bond is contingent on the outcome of the arbitration instituted by Boys Club against McLaughlin. Indeed, the nature of the dispute to be arbitrated is defined in the amended demand for arbitration to include breach of contract and claim against the performance

bond. Under these circumstances, we conclude that by the language in its bond incorporating the contract Fidelity intended, and agreed, to be bound by the arbitration provision in the contract even though it was not a party to the contract.

Fidelity cites the following cases in support of its contention that it did not agree to arbitrate by incorporating the contract into its performance bond by reference: *Transamerica Ins. Co.* v. *Yonkers Contracting Co.* (1966) 49 Misc.2d 512 [267 N.Y.S.2d 669]; *Fidelity, etc.* v. *Parsons & Whittemore Cont.* (1979) 48 N.Y.2d 127 [421 N.Y.S.2d 869, 397 N.E.2d 380]; and *Windowmaster Corp.* v. *B. G. Danis Co.* (S.D.Ohio 1981) 511 F.Supp. 157.

In *Transamerica Ins. Co.* v. *Yonkers Contracting Co., supra,* 267 N.Y.S.2d 669, it was held that the surety in a contract performance bond was not obligated to arbitrate its liability under the bond because of incorporation by reference in the bonding agreement of a subcontract between the surety's principal and the obligee containing an arbitration clause. *Fidelity, etc.* v. *Parsons & Whittemore Contractors Corp., supra,* 397 N.E.2d 380, explained the meaning of that holding and took it a step further. The Court of Appeals of New York held that where a performance bond incorporated a subcontract containing an arbitration clause, the surety agreed that disputes arising under the subcontract between the general contractor and the subcontractor would be submitted to arbitration and that the surety would be bound by the determinations made in arbitration; however, the surety did not agree that separate and distinct controversies which might arise under the terms of its performance bond between the surety and the general contractor as obligee would be submitted to arbitration.

We choose not to follow the *Parsons & Whittemore* case (*supra,* 397 N.E.2d 380). Because of the nature of Fidelity's obligations under its performance bond, it is logical to assume that the parties (including Fidelity) intended not merely that Fidelity would be bound by the result of arbitration between Boys Club and McLaughlin, but that Fidelity would join in arbitration of disputes between the parties to the contract in view of the fact that such disputes necessarily affect its liability under the bond. We agree with the dissent in *Parsons & Whittemore* wherein it is stated: "The arbitration clause in the subcontract provides that '[a]ll disputes arising out of this Contract, its interpretation, performance or breach, shall be submitted to arbitration.' Parsons and Central [general contractor and subcontractor, respectively] thereby agreed to submit to arbitration; but the language of the clause does not limit this method of resolution to disputes between the contractor and subcontractor. The majority is correct in determining that

Fidelity defined its obligation under the bond by incorporating this clause. The obligation thus defined, however, is not merely that Fidelity would be bound by a determination in arbitration between Parsons and Central, but rather, that Fidelity agreed to submit to arbitration disputes concerning the subcontract . . . . [¶] The incorporation of the subcontract and the language of the arbitration clause necessarily require that Fidelity be a party to the arbitration concerning Central's alleged breach." (*Fidelity, etc. v. Parsons & Whittemore Cont., supra*, 397 N.E.2d at pp. 383-384 (dis. opn. of Cooke, C. J.).)

In *Windowmaster Corp. v. B. G. Danis Co., supra*, 511 F.Supp. 157, it was held that the surety in a performance bond with the subcontractor as principal and the general contractor as obligee could not be compelled to participate in the arbitration of a dispute between the contractor and the subcontractor because the surety was not a signatory to the construction contracts containing arbitration clauses and did not agree in writing to arbitrate any dispute arising out of those contracts. *Windowmaster* is not in point because it does not appear that either the general contract or the subcontract was incorporated by reference into the performance bond.

We conclude that by virtue of the provision in its performance bond incorporating the contract, Fidelity agreed to be bound by the arbitration provisions of the contract.

## II

Fidelity contends that Boys Club waived the right to make Fidelity a party to the arbitration because it did not file the amended demand for arbitration, adding Fidelity as a party, until almost three years after it commenced arbitration proceedings by filing its original demand for arbitration.[3]

On a petition to compel arbitration, "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, *unless it determines that*: [¶] (a) *The right to compel arbitration has been waived by the petitioner* . . . ." (Code Civ. Proc., § 1281.2, italics added.) Waiver of the right to compel arbitration therefore is a preliminary question which the trial court must decide in considering a petition to compel arbitration. (*Pagett* v. *Hawaiian Ins. Co.* (1975) 45 Cal.App.3d 620, 622 [119 Cal.Rptr. 536].)

---

[3]Fidelity did not expressly mention waiver in its opposition to the petition to compel arbitration. Giving Fidelity the benefit of the doubt, we conclude that waiver was raised by implication in Fidelity's contention that "surety should not be compelled to arbitrate as notice of [amended] demand for arbitration was not served within a reasonable time."

A waiver is the intentional relinquishment of a known right. (*BP Alaska Exploration, Inc.* v. *Superior Court* (1988) 199 Cal.App.3d 1240, 1252.) Arbitration may be waived and delay in demanding that relief may amount to waiver. (See *Sawday* v. *Vista Irrigation Dist.* (1966) 64 Cal.2d 833, 836-837 [52 Cal.Rptr. 1, 415 P.2d 816].) The arbitration clause of the contract includes the following provision: "Notice of the demand for arbitration shall be filed . . . within a reasonable time after the claim, dispute or other matter in question has arisen . . . ." What constitutes a reasonable time is a question of fact, the answer to which depends upon the situation of the parties, the nature of the transaction, and the facts of the particular case. (*Meyer* v. *Carnow* (1986) 185 Cal.App.3d 169, 175 [229 Cal.Rptr. 617, 77 A.L.R.4th 1063].)

In March 1988 Boys Club filed its initial demand for arbitration against McLaughlin. In January 1991 it filed an amended demand seeking to make Fidelity a party to the arbitration. The only reason offered by Boys Club for the delay in filing the amended demand is that after filing the original demand "it was determined that Fidelity should have been joined in the arbitration because the performance bond expressly includes the arbitration provision of the construction contract." Declarations of Boys Club's executive director Leroy Chase (submitted in support of the petition to compel arbitration) establish that by April 1987 Boys Club not only knew of the existence of Fidelity's bond incorporating the contract, but was involved in a dispute with McLaughlin regarding its performance of the contract. Under these circumstances no good reason appears for Boys Club's delay of almost three years between its initial demand for arbitration and its amended demand seeking to make Fidelity a party to the arbitration.

Unreasonable delay in asserting a right does not, in itself, warrant a finding of waiver of the right. In addition, it must appear that the delay amounted to laches (see *Sawday* v. *Vista Irrigation Dist., supra,* 64 Cal.2d 833, 836-837), which requires a showing of some prejudice to defendant caused by the delay. (*City and County of San Francisco* v. *Pacello* (1978) 85 Cal.App.3d 637, 644 [149 Cal.Rptr. 705].) "To show prejudice for the purpose of laches the party asserting the defense must show he did or omitted to do something which detrimentally altered his position with regard to the claim or right asserted." (*In re Marriage of Nicolaides* (1974) 39 Cal.App.3d 192, 203 [114 Cal.Rptr. 56], italics omitted.) Fidelity made no showing that the delayed filing of the amended demand for arbitration caused it to believe it was not subject to the arbitration provision of the contract, or that such delay impaired its ability to participate in the arbitration in a meaningful way.

While the existence of laches is a question of fact (*California State Auto. Assn. Inter-Ins. Bureau* v. *Cohen* (1975) 44 Cal.App.3d 387, 393 [118 Cal.Rptr. 890]), the record is devoid of evidence supporting the trial court's implied finding of laches and the consequent waiver by Boys Club of its right to make Fidelity a party to the arbitration. Accordingly, Fidelity's claim of waiver is rejected.

## III

Fidelity argues that it cannot be made a party to the arbitration because the filing of the amended demand for arbitration was barred by the statute of limitations contained in the performance bond.[4] That is an issue to be raised in the arbitration proceeding, not in this judicial proceeding.

Doubts regarding the scope of arbitrable issues must be resolved in favor of arbitration. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street, supra,* 35 Cal.3d 312, 323.) " '. . . Arbitration submissions are usually construed as broadly as possible in order that differences between the parties may be resolved quickly and economically. Under the rule of broad construction an arbitrator is authorized to determine all questions which he needs to determine in order to resolve the controversy submitted to him, and the arbitrator himself decides which questions need to be determined.' [Citations.]" (*Van Tassel* v. *Superior Court* (1974) 12 Cal.3d 624, 627 [116 Cal.Rptr. 505, 526 P.2d 969].) "If participants in the arbitral process begin to assert all possible legal or procedural defenses in court proceedings before the arbitration itself can go forward, the arbitral wheels would very soon grind to a halt. [Citation.] Referring preliminary issues to the courts can cause serious delay and confusion, thus robbing the arbitration procedure of much of its value to the parties." (*Ericksen, supra,* 35 Cal.3d at p. 323, internal quotation marks omitted.)

Fidelity is bound by the arbitration provisions of the contract and Boys Club did not waive its right to make Fidelity a party to the arbitration. Accordingly, Fidelity is compelled to arbitrate (Code Civ. Proc., § 1281.2), and there our inquiry ends. Fidelity's defense based on a statute of limitations set forth in the performance bond is improperly asserted in this proceeding to compel arbitration. (Cf. *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 486-487 [121 Cal.Rptr. 477, 535 P.2d 341].)

---

[4] The bond includes the following provision: "Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due."

## IV

 Boys Club requests that we impose "appropriate sanctions" on Fidelity, in the form of attorney fees and costs, because Fidelity's position in the trial court was frivolous and taken in bad faith. Such a request must be made in the trial court (Code Civ. Proc., § 128.5); this court is without power to assess penalties for alleged bad faith actions or tactics occurring in the trial court.

Even if Boys Club's request may be construed as an argument for reversal of the order denying sanctions, it is not possible to grant such relief because the record before us does not contain Boys Club's motion for sanctions and the grounds of the motion do not otherwise appear in the record.

### DISPOSITION

The order denying petition to compel arbitration is reversed. Costs on appeal are awarded to Boys Club.

Johnson, J., and Woods (Fred), J., concurred.