Filed 9/19/24  Stoner v. SCA of CA CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DARCEL STONER,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SCA OF CA, LLC,<br><br>    Defendant and Appellant;<br><br>WSSH CSS, LLC,<br><br>    Real Party in Interest. | H051566<br>(Santa Clara County<br> Super. Ct. No. 23CV410973) |

This appeal is from the denial of a motion to compel arbitration.  Defendant SCA of CA, LLC (SCA) moved to compel when plaintiff Darcel Stoner, an SCA employee, filed prevailing wage and unfair competition claims against it.  SCA asserted that Stoner agreed to arbitrate those claims during his onboarding process by clicking an acknowledgment box on a website screen describing the company's dispute resolution policy.  The trial court disagreed.  It ruled that, by checking the box, Stoner accepted and acknowledged SCA's policy concerning dispute resolution, not the agreement to arbitrate referenced in that policy.  For the reasons explained below, we agree with this interpretation and affirm.

# I. Background

## A. SCA's Arbitration Agreement

SCA has a "Mutual Arbitration Agreement—California" (Arbitration Agreement) for its employees. With a few exceptions, this agreement covers, "to the maximum extent permissible under federal and state law," claims relating to an employee's employment, including "claims for wages and other compensation" and "claims for violation of any federal, state or other government law." The Arbitration Agreement generally requires that arbitrations be administered by the American Arbitration Association (AAA), and it provides for discovery and an award in writing. In addition, the agreement expressly waives an employee's right to bring claims "on a multi-plaintiff, class, collective, or representative basis."

The Arbitration Agreement repeatedly indicates that employees are to accept the agreement by signing it. The agreement's introduction states that that "the undersigned employee . . . and the Company agree, *by signing this Agreement*, to use the arbitration procedures in this Agreement instead of a trial in court before a judge or jury." (Italics added.) The agreement also states that an employee may obtain a copy of AAA rules "before signing this Agreement," that "[s]igning this Agreement is optional," and that "[b]y signing this Agreement" an employee affirms that he or she had sufficient time to read the agreement and "did not sign under any coercion or duress." Finally, just above the signature block for the employee, the Arbitration Agreement states: "**BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ, OR HAVE HAD THE OPPORTUNITY TO READ, THIS ARBITRATION AGREEMENT.**"

## B. Stoner's Onboarding

Stoner was hired by SCA's predecessor as a street sweeper operator. When SCA took control, it retained many employees, including Stoner. As part of its onboarding process, SCA asked retained employees such as Stoner to "review, acknowledge, read

2

and execute necessary documents regarding their employment with SCA" on a website used by the company. For each document, a separate screen appeared, and at the bottom each screen stated "I accept and acknowledge the company policy above" next to a box to be checked by the employee. Although Stoner does not remember checking any boxes, SCA presented records showing that Stoner electronically acknowledged and accepted screens with sixteen forms and at least three documents.

### 1. The Dispute Resolution Screen

One of the screens that SCA contends Stoner checked was entitled "CA – L – Voluntary Mutual Arbitration Agreement" and addressed dispute resolution (Dispute Resolution Screen). The Dispute Resolution Screen has three components: a summary paragraph, a link, and an acknowledgement box.

#### a. The Summary Paragraph

At the top of the Dispute Resolution Screen is a paragraph summarizing SCA's dispute resolution policy. The first two sentences of this summary paragraph express the belief that most work-related disputes can and should be resolved through informal conciliation, and the final two describe the arbitration procedure available if conciliation fails:

"SCA of CA, LLC ('Company') believes that most work-related concerns can be addressed with the employees' manager or Human Resources. Thus, employees are encouraged, but not required, to speak with their manager or Human Resources to resolve any work-related problem before initiating the procedures set forth in this Mutual Arbitration Agreement ('Agreement' or 'Arbitration Agreement'). Where resolution cannot be achieved through the Company's internal resources, the undersigned employee (including his/her heirs, executors, administrators, successors, and assigns) (collectively, 'Employee') and the Company agree, by signing this Agreement, to use the arbitration procedures in this Agreement instead of a trial in court before a judge or jury. Arbitration

3

is the process by which a neutral third party makes a binding decision relating to a dispute."

Notably, the summary paragraph initially references the Arbitration Agreement using its full name, "Mutual Arbitration Agreement," but then defines two terms to refer to the agreement: "Agreement" and "Arbitration Agreement." The paragraph also notes that employees agree to the Arbitration Agreement "by signing the Agreement."

### b. The Link

Directly below the summary paragraph is a link to the "Voluntary Mutual Arbitration Agreement," the same agreement earlier referred to as "Mutual Arbitration Agreement," "Arbitration Agreement," and "Agreement."

### c. The Acknowledgment Box

Beneath the link to the Arbitration Agreement is an acknowledgment box, which states "I accept and acknowledge the company policy above."

### 2. *The Acknowledgment Page*

SCA's records list the Dispute Resolution Screen among 16 onboarding screens on which Stoner "Signed Off." SCA's records also contain an "Acknowledgment Page" for the Dispute Resolution Screen. Stoner's name and employee number are on the top of the page. Immediately below that, the Acknowledgement Page states "[p]lease review the attached agreement." Further below that, there is a link to the Arbitration Agreement, and a checked acknowledgment box at the bottom.

## C. Proceedings Below

In February 2023, Stoner sued SCA and another entity on behalf of a class of street sweeping employees, claiming SCA failed to pay prevailing wages under Labor Code section 1720 et seq. and unfair competition under Business & Professions Code sections 17200-17209. Stoner subsequently amended his complaint to add a claim for Labor Code violations pursuant to the Private Attorneys General Act of 2004 (PAGA) (Labor Code, § 2698 et seq.).

4

SCA moved to compel arbitration of Stoner's individual claims, strike the class claims, and stay the representative PAGA claims. SCA argued that Stoner accepted the Arbitration Agreement by checking the acknowledgment box on the Dispute Resolution Screen. The trial court denied SCA's motion. The court assumed "for the sake of argument" that Stoner had checked the acknowledgment box, but concluded that doing so did "not establish that he assented to the terms of the Mutual Arbitration Agreement." It reasoned that, by checking the acknowledgment box, "Stoner merely accepted and acknowledged SCA's policy regarding dispute resolution." This policy, the court explained, expressed SCA's belief that most work-related disputes can be resolved informally, encouraged employees to seek informal resolution of issues, and provided the option of arbitration if informal efforts were unsuccessful. However, the policy recognized that employees agree to arbitration "by signing the Mutual Arbitration Agreement." Thus, the court concluded, "the checked box is simply an acknowledgment that the parties agree to be bound by the Mutual Arbitration Agreement if it is signed by Stoner. [(Citations omitted.)]"

SCA filed a timely notice of appeal pursuant to Code of Civil Procedure section 1294, subdivision (a).

## II. DISCUSSION

SCA appeals the denial of its motion to compel arbitration, arguing that Stoner accepted the Arbitration Agreement by checking the acknowledgment box on the Dispute Resolution Screen. We disagree. The Arbitration Agreement specified a mode of acceptance—signing the agreement—which Stoner did not employ. Moreover, far from suggesting that checking its acknowledgment box is an alternative mode of acceptance, the Dispute Resolution Screen expressly recognized that employees enter into the Arbitration Agreement by signing it. As the trial court correctly recognized, what Stoner "accepted and acknowledged" by checking the Dispute Resolution Screen's

5

acknowledgment box was SCA's dispute resolution policy, not the Arbitration Agreement.

## A. Background Principles

The parties agree that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) applies here. As the United States Supreme Court has recognized, the FAA declares " 'a liberal federal policy favoring arbitration agreements.' " (*New Prime Inc. v. Oliveira* (2019) 586 U.S. 105, 120.) This policy is "to make 'arbitration agreements as enforceable as other contracts, but not more so.' " (*Morgan v. Sundance, Inc*. (2022) 596 U.S. 411, 418.) Accordingly, " 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " (*AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 648.)

In determining whether a party has agreed to submit a dispute to arbitration, courts apply "general state-law principles of contract interpretation," albeit with "due regard" to the federal policy favoring arbitration. (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 475-476; see also *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 ["In determining the rights of the parties to enforce an arbitration agreement within the FAA's scope, courts apply state contract law while giving due regard to the federal policy favoring arbitration."].) Under California law, to form a contract, the parties' assent to the contract must be free, mutual, and communicated by each party to the other. (Civ. Code, § 1565.) In determining whether there is mutual assent, courts apply an objective standard. (*Patel v. Liebermensch* (2008) 45 Cal.4th 344, 352 ["The terms of the contract are determinable by an external, not by an internal standard—or by what has been termed the objective rather than the subjective test."].) In addition, the party moving to enforce an agreement bears "[t]he burden of proving the agreement." (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165-166.)

## B. The Arbitration Agreement

The Arbitration Agreement specifies a mode of acceptance: signing the agreement. This mode of acceptance is recognized in the Arbitration Agreement's introduction, which states that "the undersigned employee . . . and the Company agree, *by signing this Agreement*, to use the arbitration procedures in this Agreement instead of a trial in court before a judge or jury." (Italics added.) Elsewhere, the agreement repeatedly references the employee signing the agreement: (1) "Employee may obtain a copy of the AAA rules before *signing* this Agreement . . . ," (2) "[s]*igning* this Agreement is optional and not a condition of employment or employment related benefits," (3) "[b]y *signing* this Agreement, Employee affirms that Employee has been provided sufficient time to read, consider, and ask questions about this Agreement," and (4) the "Employee did not *sign* under any coercion or duress." (Italics added.) And in the last paragraph, just above the signature block for the employee, in all capital and bold letters the Arbitration Agreement states: "**BY *SIGNING* BELOW, I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ, OR HAVE HAD THE OPPORTUNITY TO READ, THIS ARBITRATION AGREEMENT.**" (Italics added.) Thus, it could not be clearer that the specified mode for accepting the Arbitration Agreement is to sign it.

Stoner did not employ this mode of acceptance. As the trial court recognized, Stoner's signature is not on the copy of the Arbitration Agreement that SCA contends Stoner accepted. Accordingly, in its reply brief, SCA expressly conceded that the "Agreement document was not signed by Stoner."

## C. The Dispute Resolution Screen

Rather than asserting that Stoner signed the Arbitration Agreement, SCA contends that he "electronically accepted/executed" the agreement by checking the acknowledgment box on the Dispute Resolution Screen. It is unclear whether the Arbitration Agreement even permits this alternative mode of acceptance: The agreement's express and repeated references to employees signing the agreement suggest

7

that a signature is the exclusive mode of acceptance.  (See, e.g., *Hofer v. Young* (1995) 38 Cal.App.4th 52, 56; see also Rest. 2d Contracts, § 60 ["If an offer prescribes the place, time or manner of acceptance[,] its terms in this respect must be complied with in order to create a contract."].)  However, we need not decide this issue because nothing in the Dispute Resolution Screen suggests that Stoner intended checking the screen's acknowledgment box to be an alternative mode of accepting the Arbitration Agreement.  By checking the box, Stoner merely accepted and acknowledged the dispute resolution policy described in the summary paragraph earlier on the screen.

### 1.  *The Dispute Resolution Screen*

The acknowledgment box on the Dispute Resolution Screen states that "I accept and acknowledge the company policy above."  The "company policy above" is naturally understood to refer to the summary paragraph that appears higher up on the Dispute Resolution Screen.  That paragraph begins by expressing the belief that most "work-related concerns" and "work-related problem[s]" can be addressed by an employee's manager or SCA's human resources department.  It then encourages employees to speak with their managers or human resources to resolve work-related problems.  Finally, it states that, "[w]here resolution cannot be achieved" by informal conciliation and cooperation, employees should use arbitration "instead of a trial in court before a judge or jury."  Thus, when Stoner checked the acknowledgment box stating that "I accept and acknowledge the company policy above," he was accepting and acknowledging the dispute resolution policy described earlier on the Dispute Resolution Screen.

Although the Arbitration Agreement is part of the dispute resolution policy described by the summary paragraph, the acknowledgment box cannot be reasonably interpreted as an acceptance of that agreement.  In the first place, the acknowledgment box does not refer to the Arbitration Agreement.  The Dispute Resolution Screen uses several terms for the Arbitration Agreement.  The title of screen refers to "CA-L-Voluntary Mutual Arbitration Agreement."  The summary paragraph refers to the

8

"Mutual Arbitration Agreement" and defines two additional terms to refer to the agreement: " 'Agreement' or 'Arbitration Agreement.' " And, much like the title, the link below the summary paragraph refers to the "Voluntary Mutual Arbitration Agreement." The acknowledgment box does not use any of these terms. Indeed, the box does not even use the word "arbitration" or the word "agreement." Instead, the box uses a new and entirely different term: "company policy above." The use of this new and different term creates a clear inference: The acknowledgment box does not refer to the Arbitration Agreement.

The acknowledgment box also does not use the method for agreeing to the Arbitration Agreement identified on the Dispute Resolution Screen. The summary paragraph states that employees "agree . . . to use the arbitration procedures" in the Arbitration Agreement "by signing *this Agreement*." (Italics added.) The acknowledgment box does not use this method. The box does not allow employees to physically sign the Arbitration Agreement. Nor does it allow them to affix an electronic signature. Indeed, the box does not even state that, by clicking it, employees will be deemed to have signed the Arbitration Agreement. The box merely allows employees to click the statement that "I accept and acknowledge," and it is the "company policy above"—not the Agreement, Arbitration Agreement, Mutual Arbitration Agreement, or Voluntary Mutual Arbitration Agreement—that is accepted and acknowledged. Checking the acknowledgment box cannot be reasonably interpreted to be assent to the Arbitration Agreement when it neither refers to that agreement nor uses the specified method for entering into it.

SCA asserts that the "company policy above" referenced in the acknowledgment box cannot be the dispute resolution process described by the summary paragraph, and therefore must refer to the Arbitration Agreement, because the process described in that paragraph is "not a policy at all." SCA's own authorities show otherwise. One case cited by SCA defines " 'policy' " to mean " 'a definite course or method of action selected

from among various alternatives and in light of given conditions to guide and determine present and future decisions.' " (*City of Oklahoma v. Tuttle* (1985) 471 U.S. 808, 823, fn. 6 [citing Webster's Ninth New Collegiate Dictionary's definition of " 'policy' "].) The dispute resolution policy described in the summary paragraph easily satisfies this definition. That policy describes a course of conduct selected from among various alternatives: The policy chooses informal conciliation and cooperation with employees rather than hostility and confrontation between management and labor and, where such cooperation fails and the employee agrees to arbitrate, arbitration rather than litigation and trials in a court before a judge or jury. Another case cited by SCA defines " 'policy' " to mean " 'general principles which guide a corporation, or rules intended to be followed consistently over time in corporate operations.' " (*Cruz v. HomeBase* (2000) 83 CalApp.4th 160, 167 [defining "corporate policy"].) The summary paragraph's dispute resolution process satisfies this definition as well: It adopts general principles—conciliation and arbitration—to guide SCA's approach to dispute resolution.

SCA also argues that an employee may not "accept" a policy unless a binding, enforceable contract results. That is incorrect. In ordinary usage the word "accept" can mean, among other things, "to receive with consent" or even "to take without protest." (Webster's 3d New Internat. Dict. (1993) p. 10, col. 3.) Thus, when Stoner clicked the acknowledgment box and stated "I accept" SCA's dispute resolution policy, he could have been saying simply that he had received the policy. Moreover, this interpretation is supported by the fact that the acknowledgment box states that "I accept *and acknowledge*" the dispute resolution policy. (Italics added.) If, as SCA asserts, the acknowledgment box had used the word "accept" in a technical sense to refer to a contractual acceptance, there would have been no need to add the word "acknowledge." In addition, it is not reasonable to interpret the acknowledgment box to use the word "accept" in such a technical legal sense when it is coupled with the word "acknowledge"

10

and the term "company policy," neither of which has any technical legal meaning. In short, SCA has failed to offer a plausible interpretation of the Dispute Resolution Screen.

## 2. Context

SCA tries to draw support from the context in which the acknowledgment box appears. In particular, SCA points out that, on the day that Stoner clicked the Dispute Resolution Screen's box, he also electronically acknowledged 15 other policies and forms containing identically worded boxes. However, SCA fails to present any evidence that all these policies and forms—which include a "Welcome Letter and Checklist"—contain any enforceable agreements that might be accepted. As a consequence, the other policies and forms presented to Stoner lend no support to SCA's assertion that the acknowledgment box on the Dispute Resolution Screen must create an enforceable agreement.

SCA also points to the Acknowledgment Page generated after Stoner checked the acknowledgment box on the Dispute Resolution Page, asserting that it "recorded Stoner's acceptance of the Agreement." There is, however, no evidence that this page was ever viewed by Stoner. Moreover, the page merely reproduces the acknowledgment box's statement that "I accept and acknowledge the company policy above" with a now checked box. The page does omit the summary paragraph. However, in its place, the page states "[p]lease review the attached agreement," not the company policy, which suggests not only that the company policy refers to something besides the Arbitration Agreement but also that Stoner did not review the Agreement.

SCA argues as well that the Dispute Resolution Screen's acknowledgment box would be rendered superfluous if clicking it is not interpreted as agreeing to the Arbitration Agreement. We disagree. Even if it does not accept the Arbitration Agreement, the acknowledgment box documents whether the employee checking it received notice of the information on the Dispute Resolution Screen. In any event, the principle that terms should not be interpreted to be superfluous applies to contracts. The

question here is whether a contract was formed, and SCA provides no authority extending that principle to this situation.

### 3. Case Law

Citing several cases, SCA also points out that an arbitration agreement may be accepted through a standalone acknowledgement referencing the agreement. While that is true as an abstract matter, the cases cited by SCA finding such acceptances are easily distinguished.

SCA relies heavily on *B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931. The plaintiff in that case sued a video game company, and the company moved to compel arbitration under a license agreement that expressly incorporated a separate dispute resolution policy containing an arbitration provision. (*Id*. at pp. 937-940.) The first page of the license agreement stated, in bold and all capital letters, that it contained a dispute resolution provision with an arbitration agreement: " 'PLEASE NOTE THAT THE SECTION BELOW TITLED "DISPUTE RESOLUTION" CONTAINS A BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER. THEY AFFECT YOUR LEGAL RIGHTS. PLEASE READ THEM.' " (*Id*. at p. 939.) Based on this provision, the Court of Appeal held that the plaintiff received "sufficiently conspicuous notice" that he would be agreeing to arbitrate claims if he accepted the license agreement. (*Id*. at pp. 954.)

The opposite is true here. The Dispute Resolution Screen did not notify Stoner that he would be agreeing to arbitrate claims if he clicked the screen's acknowledgment box. To the contrary, as noted above, the screen informed Stoner that employees agree to arbitrate "by signing the [Arbitration] Agreement." In addition, far from notifying Stoner that by clicking on the acknowledgment box he would be entering into the Arbitration Agreement, which the Dispute Resolution Screen repeatedly referenced earlier, the box said that he would accept and acknowledge "the company policy above," which as shown

12

above is naturally understood to be described in the summary paragraph earlier on the screen.

*Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373 (*Harris*) is equally inapposite. In *Harris*, the Court of Appeal concluded that an employee had entered into an arbitration agreement because a handbook acknowledged by the employee expressly notified employees that they " 'will be deemed to have consented to the Agreement to Arbitrate by virtue of receipt of this Handbook.' " (*Id.* at p. 383.) The Dispute Resolution Screen does not tell Stoner that he will be deemed to have consented to the Arbitration Agreement by clicking the acknowledgment box. Indeed, as just noted, the Dispute Resolution Screen says just the opposite: It characterizes arbitration as "voluntary" and states that employees agree to arbitrate "by signing the [Arbitration] Agreement."

The other decisions cited by SCA are inapposite as well. In one, a surety's construction bond explicitly incorporated by reference a construction contract containing an arbitration clause. (*Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1271.) In another, a signed application for membership in a board of realtors stated that, by applying, members agreed to abide by bylaws imposing on members a duty to arbitrate certain disputes. (*King v. Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 355.) Neither decision suggests that Stoner intended to accept the Arbitration Agreement by clicking a box referring to the "company policy above."

In sum, the Dispute Resolution Screen did not notify Stoner that he would be agreeing to the Arbitration Agreement by clicking the screen's acknowledgment box, especially as the screen expressly recognized elsewhere that the way to agree to arbitrate was by signing the Arbitration Agreement. Instead, as indicated above, the box's statement that "I accept and acknowledge the company policy above" is naturally understood merely to confirm that Stoner received the dispute resolution policy described in the summary paragraph earlier on the screen. We therefore conclude that Stoner did

13

not accept the Arbitration Agreement by clicking on the acknowledgment box and that SCA's motion to compel arbitration was correctly denied.

## III. DISPOSITION

The order denying the motion to compel arbitration is affirmed. Stoner is entitled to his reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

14

_____
BROMBERG, J.

WE CONCUR:

_____
BAMATTRE-MANOUKIAN, ACTING P. J.

_____
DANNER, J.

*Stoner v. SCA of CA, LLC*
H051566