[No. D049936. Fourth Dist., Div. One. Feb. 5, 2008.]

PRIMEL ADAJAR et al., Plaintiffs and Respondents, v.
RWR HOMES, INC., et al., Defendants and Appellants.

---

**COUNSEL**

Gemmill, Thornton & Baldridge, Bruce M. Thornton, Carlos V. Yguico; Lincoln, Gustafson & Cercos, Teresa Beck and Jason A. Specht for Defendants and Appellants.

Milstein, Adelman & Kreger, Fred Matthew Adelman, Mark J. Masterson; Dunn Koes and Pamela E. Dunn for Plaintiffs and Respondents.

Opinion

**McCONNELL, P. J.**—In this construction defect case, defendants RWR Homes, Inc., and related entities (collectively RWR)[1] appeal an order denying their motion to compel arbitration and stay the litigation as to certain plaintiffs. RWR contends the order violates federal and state laws that favor arbitration. RWR, however, did not submit the arbitration agreement that was allegedly incorporated by reference in plaintiffs' applications for warranty protection. Because RWR did not satisfy its burden of establishing the existence of an arbitration contract, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

RWR built the single-family tract homes at issue in this action. In March 2006 the owners of 83 of the homes sued RWR for strict products liability, breach of implied and express warranties, breach of contract and negligence. The first amended complaint filed in May 2006 added the owners of an additional nine homes as plaintiffs. The amended pleading alleges various defects pertaining to soil compaction and movement; drainage, landscaping and irrigation; fencing and retaining walls; waterproofing; roofs; windows and doors; framing, drywall, siding and stucco; plumbing and electrical; sheet metal; painting; tubs and showers; and fireplaces and chimneys.

After answering the first amended complaint, RWR moved to compel arbitration and stay the action as to the claims of the owners of 28 of the homes. RWR argued these owners signed written arbitration agreements governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.).

RWR submitted a declaration by Stephen Graham, a vice-president with Home Buyers Warranty Corporation (HBW), a Colorado entity authorized to do business in California. The declaration explained that RWR participated in the HBW program, which allowed it, on the payment of fees and HBW's approval, to enroll homes in a nationwide insured warranty program, under which it could issue warranties to new home buyers at the close of escrow at no cost to them. The builder's warranty obligations are insured by a warranty insurer selected by HBW. According to Graham's declaration, HBW warranties "typically provide" that the homes will be free of workmanship defects for one year, free of systems defects such as plumbing, electrical, mechanical for two years, and free of structural defects for 10 years.

RWR also submitted copies of standard-form applications for HBW warranties signed by owners of the 28 homes. The applications state:

---

[1] Defendants also include the following RWR entities: LB/L-RWR Otay 62, LLC; LB/L-RWR Otay 91, LLC; RWR Otay Investors 29, LLC; RWR Otay Investors 49A, LLC; RWR Otay Investors 50, LLC; LB/L-RWR Master, LLC; and RWR II, LLC.

"BUYER'S ACKNOWLEDGEMENT AND CONSENT

"Your Builder is applying to enroll your home in the 2-10 HBW-insured warranty program. By signing below, you acknowledge that you have viewed and received the video 'Warranty Teamwork: You, Your Builder & HBW,' you have read a sample copy of the Warranty Booklet, and CONSENT TO THE TERMS OF THESE DOCUMENTS INCLUDING THE BINDING ARBITRATION PROVISION contained herein. You further understand that when the warranty is issued on your new home, it is an Express Limited Warranty and that all claims and liabilities are limited to and by the terms and conditions of the Express Limited Warranty as stated in the 2-10 HBW Booklet. IF YOU, THE BUYER(S), HAVE NOT RECEIVED A CERTIFI-CATE OF WARRANTY COVERAGE AND A WARRANTY BOOKLET FROM HBW WITHIN THIRTY (30) DAYS AFTER CLOSING, THEN NO WARRANTY EXISTS ON THE HOME AT THIS ADDRESS."

RWR did not submit any copy of the video or the "sample copy of the Warranty Booklet" (sample warranty booklet) that owners attested to having read before signing the above paragraph. Rather, RWR submitted copies of two versions of an HBW warranty booklet that HBW issued to buyers after the close of escrow. One version is dated January 1, 2001 (2001 version), and the other version is dated October 1, 2002 (2002 version). RWR also submitted copies of certificates of warranty insurance that notified the owners their homes were enrolled in the warranty program and specified whether they received the 2001 or the 2002 warranty booklet.

Both the 2001 and 2002 versions of the warranty booklet contain a clause requiring binding arbitration under the rules of Construction Arbitration Services, Inc. (CAS), of any disputes between RWR and the owner, whether or not they arise from the warranty, and acknowledging the arbitration agreement involves interstate commerce and is subject to the FAA. The two versions of the arbitration provision differ somewhat, however, as the 2001 booklet provides, "[n]o arbitration proceeding shall involve more than one single-family detached dwelling," and the 2002 version does not include that restriction. Further, the 2001 version gives HBW the discretion to choose an arbitrator other than CAS, and the 2002 version requires CAS arbitration.

In opposition to the motion, plaintiffs argued, among other things, that RWR was "attempting to compel arbitration based upon consent to an arbitration provision not provided to this court or Plaintiffs' counsel. The terms of the arbitration provision in the [sample warranty booklet] are unknown. [RWR] cannot establish to what provision consent was given." Additionally, the owners of most of the 28 homes submitted declarations that stated they did not receive a video pertaining to the warranty or a copy of the sample warranty booklet.

After a hearing, the court denied the motion on the grounds that (1) even if RWR were a party to plaintiffs' arrangement with HBW, arbitration is unavailable because plaintiffs' claims are not for relief under the warranties; and (2) the only arbitration agreement is set forth in the application for warranty protection, and the application is "procedurally unconscionable because there is no specific acknowledgement of the arbitration clause . . . and it is not separately identified in the paragraph," and "substantively unconscionable because none of the terms of the arbitration are set forth . . . , nor is there any information regarding Plaintiffs' waiver of a right to jury trial."

## DISCUSSION

### I

When there is no conflicting extrinsic evidence, as here, we independently review the denial of a motion to compel arbitration. (*Maggio v. Windward Capital Management Co.* (2000) 80 Cal.App.4th 1210, 1214 [96 Cal.Rptr.2d 168].)

### II

### A

RWR contends the court's order violates the FAA, which "broadly provides that a written provision in 'a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " (*EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 289 [151 L.Ed.2d 755, 122 S.Ct. 754], citing 9 U.S.C. § 2.) The FAA "incorporates a strong federal policy of enforcing arbitration agreements" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 96 [99 Cal.Rptr.2d 745, 6 P.3d 669]), and "generally preempts state legislation that would restrict the enforcement of arbitration agreements [citation]." (*Id.* at p. 98.)

RWR also cites the California Arbitration Act (CAA) (Code Civ. Proc., § 1280 et seq.), through which the " 'Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." [Citations.] Consequently, courts will " 'indulge every intendment to give effect to such proceedings.' " [Citations.] . . . "The policy of the law in recognizing arbitration agreements and in providing by

statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." [Citation.]' " (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830 [88 Cal.Rptr.2d 366, 982 P.2d 229].)

■ Under both federal and state law, however, arbitration cannot be compelled absent an arbitration agreement. "As the United States Supreme Court has stated, 'The "liberal federal policy favoring arbitration agreements," [citation] . . . is at bottom a policy guaranteeing the enforcement of private contractual arrangements.' [Citations.] Similarly, the California Supreme Court has stated [the] ' ". . . policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate." ' [Citation.] 'Although "[t]he law favors contracts for arbitration of disputes between parties" [citation], " 'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .' " [Citations.]' " (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 788 [79 Cal.Rptr.2d 273].) "Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2007) ¶ 5:8.3, pp. 5-5 to 5-6 (hereafter Knight), citing *Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1129 [211 Cal.Rptr. 62].)

■ RWR asserts the court erred by finding the applications for HBW warranties are insufficient evidence of plaintiffs' agreement to arbitrate. RWR cites the general rule that the "agreement need not expressly provide for arbitration but may instead incorporate by reference another document containing an arbitration clause." (Knight, *supra*, ¶ 5:18, p. 5-12; see also *King v. Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 357–358 [175 Cal.Rptr. 226] [agent bound by arbitration clause in bylaws incorporated by reference in application for membership in local real estate board]; *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1274 [8 Cal.Rptr.2d 587] [surety bound by arbitration clause in construction contract incorporated by reference in performance bond].)

■ The applications plaintiffs signed here, however, did not incorporate by reference the terms of arbitration clauses included in the subsequently issued 2001 or 2002 warranty booklet. Rather, the applications provided that by signing the forms, homeowners acknowledged they had "viewed and received the video 'Warranty Teamwork: You, Your Builder & HBW,' you have read a sample copy of the Warranty Booklet, and CONSENT TO THE TERMS OF THESE DOCUMENTS INCLUDING THE BINDING ARBITRATION PROVISION *contained therein.*" (Italics added.) In support of its motion to compel, RWR did not produce a copy of either the video or the

sample warranty booklet referred to in the application, and thus the terms of arbitration to which plaintiffs supposedly agreed cannot be determined. In other words, RWR failed to prove the existence of an arbitration contract and plaintiffs' waiver of their right to a jury trial.

RWR asserts the "sample warranty booklet doubles as the actual booklet when HBW mails it to a homebuyer concurrently with a Certificate of Warranty Coverage." It is unclear what that means, but to any extent it is intended to mean the sample warranty booklet is identical to the 2001 and 2002 warranty booklets, it is ineffective because RWR does not cite the appellate record to show it submitted any evidence to support that claim, and our review of the record reveals no such evidence.

█ We may not simply infer the 2001 and 2002 warranty booklets issued to plaintiffs after the close of escrow were identical to the sample warranty booklet referred to in the applications, particularly since the 2001 and 2002 warranty booklets contain differences in their arbitration clauses. Moreover, RWR has cited cases that show some HBW warranty booklets did not specify arbitration through CAS, but through AAA (American Arbitration Association). (*McKee v. Home Buyers Warranty Corp. II* (5th Cir. 1995) 45 F.3d 981, 983, fn. 2; *Rainwater v. National Home Ins. Co.* (4th Cir. 1991) 944 F.2d 190, 191.) Further, under the 2001 and 2002 warranty booklets, *any* claim or dispute between a homeowner and RWR would be subject to arbitration, whether or not it pertained to the warranties, but there is no suggestion the sample warranty booklet, to any extent it actually existed, included such a broad clause. Arbitration may not be compelled absent an agreement to submit the particular claims at issue to arbitration. (*Badie v. Bank of America, supra,* 67 Cal.App.4th at pp. 787–788.)[2]

Additionally, RWR submits that "[w]hen a party signs a contract affirming that he agrees to be bound by provisions contained in a separate document,

---

[2] RWR relies on *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495 [30 Cal.Rptr.3d 787, 115 P.3d 68], in which our Supreme Court upheld an arbitration agreement based on a clause in a disability insurance policy provided to the insured after he applied for coverage. In *Boghos,* however, the application provided, " 'I understand and agree that *any dispute* concerning this insurance must be submitted to binding arbitration if the amount in dispute exceeds the jurisdictional limits of small claims court and is not resolved with a formal review by Underwriters. I understand and agree that this is a waiver of my and Underwriters['] rights to a trial by jury.' " (*Id.* at p. 499, fn. 1, italics added.) Here, in contrast, the application for warranty did not notify plaintiffs as to what types of disputes would be subject to arbitration. Rather, the application referred to arbitration terms set forth in a sample warranty booklet that RWR did not produce.

Moreover, there is a "rule that an insured has a duty to read the policy and cannot thereafter complain that the terms were unknown," including an arbitration clause, as an insured may cancel a policy and switch to another carrier. (*Kleveland v. Chicago Title Ins. Co.* (2006) 141 Cal.App.4th 761, 764 [46 Cal.Rptr.3d 314].) That rule does not appear to apply in the context of a home warranty paid for by a builder.

there is a presumption that the party knows what terms he was agreeing to." RWR also asserts that because plaintiffs signed applications for warranty coverage that acknowledged they had viewed a video and a sample warranty booklet, it was their burden "to establish that they did not knowingly or willingly agree to the incorporated provisions because the separate provisions were not reasonably available." RWR cites *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 641 [223 Cal.Rptr. 838], in which the court explained: " 'As a general rule, a party is bound by the provisions of an agreement which he signs, even though he does not read them and signs unaware of their existence.' "

It was RWR's burden to prove an arbitration contract, however, and no arguable presumption arises as to plaintiffs' knowledge when RWR failed to submit the sample warranty booklet referred to in the application. Even if all parties agreed the application incorporated a sample warranty booklet, arbitration cannot be compelled because there is no evidence of its terms. " ' "For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." ' " (*Chan v. Drexel Burnham Lambert, Inc., supra,* 178 Cal.App.3d at p. 641, italics omitted.) RWR is incorrect in saying the sample warranty ballot was easily available to plaintiffs, when it apparently could not even produce the document.

Equally unavailing is RWR's contention the existence of an arbitration agreement is for the arbitrator to determine. RWR relies on a CAS rule that the "arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part," and on a provision of the 2001 warranty booklet that states arbitration shall be subject to CAS rules. Again, however, the 2001 warranty booklet and CAS rules are immaterial as there is no evidence that in applying for warranty protection plaintiffs agreed to be bound by them. RWR concedes the "very existence of an arbitration agreement is for judicial determination."[3]

---

[3] Given our holding, we are not required to address the trial court's findings that arbitration is unavailable because plaintiffs' claims are unrelated to HBW's warranties, and because of procedural and substantive unconscionability. "[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record." (*Blue Chip Enterprises, Inc. v. Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706, 712 [139 Cal.Rptr. 651].) Further, as plaintiffs' declarations that they did not receive a sample warranty booklet are unnecessary to our holding, we do not reach RWR's contention the declarations were inadmissible under Evidence Code section 622.

## B

RWR's reliance on *In re Medallion, Ltd.* (Tex.App. 2002) 70 S.W.3d 284, is misplaced. In *Medallion,* the contract for sale of a home referenced a limited warranty to be provided the owners at closing. At closing, the owners signed an application for a warranty that acknowledged the arbitration clause in the limited warranty, which clause "provided for mandatory binding arbitration of 'Unresolved Warranty Issues.' The term 'Unresolved Warranty issues' was defined as 'All requests for warranty performance, demands, disputes, controversies and differences that may arise between the parties to this Limited Warranty that cannot be resolved among the parties.' " (*Id.* at p. 286.) The appellate court held that by signing the application the owners entered into an arbitration agreement. (*Id.* at p. 287.) Here, in contrast, there is no evidence of the arbitration clause to which plaintiffs supposedly agreed.

RWR's reliance on opinions pertaining to arbitration clauses in HBW warranty applications is also misplaced. In *Wise v. Tidal Construction Co.* (2003) 261 Ga.App. 670 [583 S.E.2d 466] (*Wise*), the plaintiff signed an application for a warranty, and attached to the application was a " 'Home Buyers Warranty Booklet,' which included mandatory arbitration of all claims arising in warranty, contract, fraud, or tort under the FAA. The express written warranty was issued to the plaintiffs as part of the sale contract, which incorporated this warranty booklet with the mandatory arbitration clause under the FAA." (*Id.* at p. 672 [583 S.E.2d at p. 468].) The court held the arbitration clause applied to breach of contract and negligence claims as well as warranty claims, but the homebuilder waived arbitration by participating in litigation. (*Id.* at pp. 672, 673 [583 S.E.2d at pp. 468, 469].) Unlike here, in *Wise* there is no suggestion the homebuilder failed to produce the actual arbitration clause incorporated by reference in the warranty application. The other warranty cases RWR cites are distinguishable on the same ground. (*McKee v. Home Buyers Warranty Corp. II, supra,* 45 F.3d 981; *Rainwater v. National Home Insurance Company, supra,* 944 F.2d 190; *Kelley v. Benchmark Homes, Inc.* (1996) 250 Neb. 367 [550 N.W.2d 640], partially disapproved of by *Webb v. American Employers Group* (2004) 268 Neb. 473 [684 N.W.2d 33, 41].)[4]

RWR has cited numerous other cases, but we need not discuss them because they also do not concern an alleged arbitration agreement whose terms were unknown to the trial court through the failure of proof of the party moving to compel arbitration.

---

[4] RWR also cites *Lopez v. Home Buyers Warranty Corp.* (Ala. 1993) 628 So.2d 361, but it was vacated and remanded in *Home Buyers Warranty Corp. II v. Lopez* (1995) 513 U.S. 1123 [130 L.Ed.2d 876, 115 S.Ct. 930].

## DISPOSITION

The order is affirmed. Plaintiffs are entitled to costs on appeal.

Benke, J., and O'Rourke, J., concurred.