Filed 4/30/14  Coffey v. Beverages & More CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LISA COFFEY, | B243361 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC477269) |
| v. | |
| BEVERAGES & MORE, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Amy D. Hogue, Judge.  Affirmed.

———

Jackson Lewis, Nicky Jatana, Benjamin J. Kim, and Clare Lucich for Defendant and Appellant.

Capstone Law, Melissa Grant, Glenn A. Danas, and Robert K. Friedl for Plaintiff and Respondent.

———

Beverages & More, Inc. (Beverages), appeals from the superior court's order declining to compel arbitration of Lisa Coffey's complaint. We conclude that substantial evidence supports the court's determination that Beverages failed to prove that Coffey entered into an arbitration agreement with Beverages, and we therefore affirm.

BACKGROUND

Coffey alleges that at all relevant times she was a nonexempt, hourly employee of Beverages. She filed suit against Beverages on behalf of herself and a putative class of similarly situated nonexempt, hourly employees of Beverages. Coffey alleges various violations of the Labor Code, including failure to pay overtime and minimum wages, as well as violation of Business and Professions Code section 17200.

Beverages moved to compel arbitration. In support of the motion, Beverages submitted the declaration of its senior director for human resources, Kelly Purves. Purves stated that "[p]rior to initiating employment with [Beverages], prospective employees must read, complete and sign a number of 'onboarding' documents," which include an "Associate Handbook" (hereafter the "Handbook") that "includes an agreement to arbitrate employment-related claims" (hereafter the "Arbitration Agreement"). Purves added that "[o]n information and belief, prior to October 2009, [Beverages] provided these same onboarding documents in hardcopy form and required employees to sign them by hand. In October 2009, [Beverages] transitioned the onboarding process to an online website to ensure consistency and efficiency." "To initiate the onboarding process," Beverages sends prospective employees an email containing "a hyperlink directing them to a website to read, complete and electronically sign the onboarding documents," which are posted as PDF files. According to Purves, Beverages sent such an email to Coffey, who electronically signed the Handbook, which includes the Arbitration Agreement. Attached as exhibits to Purves's declaration were three "relevant pages" of the Handbook, as well as a copy of "the confirmation of Ms. Coffey's electronic signature for these documents." Attached as an exhibit to a subsequent declaration by Purves is what appears to be a copy of all pages of the "onboarding materials" that were provided to Coffey, which total just over 70 pages.

The "confirmation of Ms. Coffey's electronic signature" consists of a single page bearing Coffey's name at the top. Under the headings "Signed Documents" and "The following documents have been signed," the page lists the names of 12 PDF files, one of which is identified as "BevMo' Assoc Handbook." Next to each file name are the words "Signed by Employee," followed by a date and time of day.

The complete Handbook document that is attached to Purves's later declaration begins with a title page, a copyright page, and a table of contents, followed by 37 pages of text, which are consecutively paginated. The last section listed in the table of contents is "Termination," which appears in its entirety on page 34. Page 35 is entitled "Acknowledgement of Having Read and Understood This Handbook." It begins, "I acknowledge that I have received a copy of the Beverages & more! Associate Handbook and understand that it contains important information about personnel policies and my privileges and obligations as an Associate." The same page provides two lines for the employee's initials as acknowledgement that the employee has "carefully reviewed and sought answers to [the employee's] questions if necessary in certain key sections, including: [¶] Associate Expectations contained in Section 5" and "Ethical Standards contained in Section 6.1." (Bold omitted.) Coffey's initials do not appear on either line; both lines are blank. The same page also states the following: "I understand that the guidelines contained in this handbook are not intended to create any contractual rights or obligations, express or implied." Page 36 states, "I understand and agree that this Acknowledgement contains a full and complete statement of the agreements and understandings that it recites, that no one has made any promises or commitments to me contrary to the foregoing, and that this Acknowledgement supersedes all previous agreements, whether written or oral, express or implied, relating to the subjects covered in this Acknowledgement." After that integration clause, there are lines for the employee to fill in the date, the employee's signature, and the employee's printed name. All of those lines are blank as well.

Page 37 of the document is entitled "Arbitration." It begins, "In consideration of our mutual promises and our at-will employment relationship, Beverages & more!, Inc.

('Beverages & more!') and I ('Associate') agree" to arbitrate, on specified terms and conditions, "[a]ny controversy or claim arising out of or relating to Associate's employment or termination of employment . . . that cannot be resolved between the parties themselves." Again, there are lines for the employee to fill in the date, the employee's signature, and the employee's printed name. Again, all of those lines are blank.

In contrast, numerous other "onboarding" documents attached to Purves's later declaration have signature lines that are *not* blank but rather include Coffey's typed "signature." The document immediately following the Handbook is entitled "General Safe Job Procedures," and the name "Lisa Coffey" is typed on the signature line. Coffey's typed "signature" likewise appears on the signature lines of no less than nine additional "onboarding" documents.

The superior court denied Beverages' motion to compel arbitration, concluding that Beverages "has failed to prove the existence of an enforceable arbitration agreement by a preponderance of the evidence." The court observed that the Handbook's acknowledgement page and the Arbitration Agreement have their own signature lines, but, by Purves's own admission, employees "do not have the ability to submit a separate electronic signature for the Agreement." The court reasoned that "[t]he problem is that the receipt of a single signature is inconclusive with respect to the independent formation of an agreement to arbitrate," because "the single signature is susceptible of an inference that [the employee] signed either or both provisions." The court also noted that the Handbook "is ambiguous and inconsistent on the question whether it creates any enforceable agreement to arbitrate." As noted above, the Handbook's acknowledgement includes a disclaimer that "the guidelines contained in this handbook are not intended to create any contractual rights or obligations," but "it does not define or limit the term 'guidelines.' Indeed, nothing in the Handbook suggests that the term 'guidelines' in the disclaimer is limited to certain provisions in the Handbook rather than generally applicable." Accordingly, the court concluded that "the arbitration agreement . . . is embraced by the terms of the disclaimer and unenforceable." For all of these reasons, the

4

court concluded that Beverages "has failed to prove the threshold requirement—the existence of an agreement to arbitrate."

Beverages timely appealed from the order denying its motion to compel arbitration.

DISCUSSION

The party seeking to compel arbitration "bears the burden of establishing the existence of a valid agreement to arbitrate." (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 356.) In ruling on a motion to compel arbitration, "[t]he trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion." (*Id.* at pp. 356-357.) We must affirm the court's determination of the existence or nonexistence of an agreement to arbitrate if that determination is supported by substantial evidence. (*Id.* at p. 357.)

In its opening brief, Beverages asserts that we should review the trial court's order de novo. In her respondent's brief, however, Coffey contends that the trial court's factual determination of the existence or nonexistence of an agreement to arbitrate is reviewed under the substantial evidence standard, which applies to factual findings in general. (See *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.) We conclude that the contention is correct.

The record contains substantial evidence to support the superior court's finding. The record contains evidence of (1) a single signature for the entire Handbook document with no indication of whether Coffey intended to be signing the acknowledgement or the Arbitration Agreement or both, (2) typed signatures on the signature lines of numerous other onboarding documents and the absence of any such signature on any signature line in the Handbook (including the Arbitration Agreement), and (3) the Handbook's express disclaimer that its "guidelines" (a term left undefined by the Handbook) create any contractual rights or obligations. That evidence constitutes more than substantial evidence supporting the superior court's determination that Beverages failed to prove that Coffey agreed to arbitration.

5

Next, Beverages argues that even if Coffey did not expressly agree to arbitration, she implicitly agreed to it by accepting employment with Beverages. It is true that an arbitration agreement need not be signed in order to be valid and enforceable (see, e.g., *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.* (2d Cir. 1987) 815 F.2d 840, 846), but we are not persuaded that the record here supports (let alone compels) an inference that Coffey implicitly agreed to arbitration. Nothing in the record indicates that Coffey was informed or believed that Beverages' offer of employment was conditioned on her agreement to arbitrate. The only evidence that Beverages cites is (1) the Arbitration Agreement states that it (i.e., the Arbitration Agreement) is "[i]n consideration of our mutual promises and our at-will employment relationship," and (2) Purves's statement that prospective employees were "given up to 24 hours to review the Handbook (which also contains the [Arbitration] Agreement." Neither piece of evidence supports the inference urged by Beverages. Any term that either party might wish to add to their employment agreement could be characterized by that party as being "[i]n consideration of our mutual promises and our at-will employment relationship," but it does not follow that the proposed term is a required condition of entering into that relationship. And giving Coffey "up to 24 hours" to review the Handbook of course did not alert her that agreeing to arbitration was a condition of her employment.

In arguing that Coffey implicitly agree to arbitrate, Beverages relies on *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, but that reliance is misplaced. In that case, the plaintiff was already an employee of the defendant when the defendant sent a memorandum to all employees, imposing on all employees a "Dispute Resolution Program" that included arbitration and stating that "IT APPLIES TO YOU." (*Id.* at pp. 418-419.) The court inferred that by continuing to work for the defendant after receiving the memorandum, the plaintiff implicitly agreed to the dispute resolution program. (*Id.* at p. 422.) Here, no evidence supports such an inference. Again, nothing in the record indicates that Coffey was informed or believed or should have known that Beverages' offer of employment was conditioned on her agreement to arbitrate.

6

Beverages also refers us to the strong policy, under both federal and California law, favoring enforcement of arbitration agreements according to their terms and placing arbitration agreements "on an equal footing with other contracts." (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __ [131 S.Ct. 1740, 1745].)  Although we of course recognize those well-established policies, it is equally well-established that "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate" (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481) and that "'[a]bsent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived'" (*Adajar v. RWR Homes, Inc.* (2008) 160 Cal.App.4th 563, 569, quoting Knight et al., Cal. Practice Guide:  Alternative Dispute Resolution (The Rutter Group 2007) ¶ 5:8.3, pp. 5-5 to 5-6).  Here, the superior court's determination that Beverages failed to prove the existence of a clear agreement to arbitrate is supported by substantial evidence.  We therefore must affirm that determination, and our resolution of that issue makes it unnecessary for us to address the remainder of the issues raised by the parties.

DISPOSITION

The order is affirmed.  Respondent shall recover her costs of appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, Acting P. J.

We concur:



JOHNSON, J.



MILLER, J.*

---

*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7