Filed 9/29/16  Won v. Vault Bioventures CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| JEY WON,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VAULT BIOVENTURES, INC. et al.,<br><br>    Defendants and Appellants. | D069130<br><br><br>(Super. Ct. No.<br>  37-2015-00001387-CU-FR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Procopio, Cory, Hargreaves & Savitch and Phillip L. Kossy, Kendra J. Hall, for Defendants and Appellants Vault Bioventures, Inc. and Joe Young.

Higgs Fletcher & Mack and John Morris, Maggie Elyse Schroedter, Rachel E. Moffitt, for Plaintiff and Respondent.

Appellants Vault Bioventures, Inc. (Vault) and its Chief Executive Officer, Joe Young, appeal from an order denying their motion to compel arbitration of respondent Jey Won's lawsuit and stay proceedings.  The parties agree the employment agreement

does not contain an arbitration clause; nonetheless, appellants contend Won was bound by the arbitration clauses separately found in Vault's "stock option agreement" and "2011 Equity Incentive Plan" (the Plan), and the notices included in three grant notices that Won signed when he exercised his stock options. We conclude the separate arbitration agreements were not incorporated by reference into the employment agreement and, therefore, Won did not agree to arbitration.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2011, Won was hired as "Vice President, Consulting Practice Leader" at Vault, a life sciences biopharmaceutical firm that was then a startup. The January 2011 employment agreement, which takes the form of a letter from Young to Won, states: "As you are aware, [Vault] has not yet commenced operations, and the only cash compensation that you will initially receive will be that portion of the compensation derived from consulting fees actually received from [Vault's] future clients, the amount of which will be mutually agreed upon by [Vault] and you from time to time."

The employment agreement sets forth Won's compensation comprising of a "base wage" of $255,000 plus an annual incentive bonus. A section of the employment agreement titled "Equity Award" outlined Won's entitlement to stock options: "In connection with your employment, [Vault] will recommend that the Board of Directors

2

grant you stock options . . . to purchase the shares of [Vault's] Common Stock" pursuant to a formula and timetable listed in the employment agreement.[1]

An "Inventions Agreement" attached to the employment agreement states, "Your acceptance of this offer and commencement of employment with [Vault] is contingent upon the execution and delivery to an officer of [Vault], of [Vault's] Proprietary Information and Inventions Agreement . . . prior to or on your Start Date." The last paragraph of the employment agreement states in part: "To indicate your acceptance of [Vault's] offer, please sign and date this letter in the space provided below and return it to me, along with a signed and dated original copy of the Inventions agreement[.]"

The employment agreement contains two separate integration clauses; one states: "This Agreement, together with the Inventions Agreement, contains the complete, final and exclusive agreement of [Vault] and you relating to the terms and conditions of your employment with [Vault], and supersedes all prior and contemporaneous oral and/or

---

[1] Further referencing the stock option agreement and the Plan, the employment agreement states: "Notwithstanding anything herein contained to the contrary, (i) vesting of the Option Shares under all of the Options will, of course, depend on your continued employment with [Vault], and (ii) in the event that you shall devote less than your full time work efforts to [Vault], [Vault] shall be permitted to reduce the number of Option Shares vesting and/or extend the vesting period, as contemplated pursuant to [Vault's] 2011 Equity Incentive Plan. . . . The Options will be incentive stock options to the maximum extent allowed by the tax code and will be subject to the terms of the Plan, the Stock Option Grant Notice and the Stock Option Agreement . . . between you and [Vault], including but not limited to a 'lock-up' provision and a right of first refusal in favor of [Vault]."

written and/or implied representations, employment agreements or arrangements between [Vault] and you."[2]

Won asserts in a declaration that when he signed the employment agreement in January 2011, he had not yet received from appellants the Plan[3] and the stock option agreement[4] and their respective arbitration clauses. However, by June 2011, Won obtained those separate documents, although he claims he received a copy of the Plan lacking its first twelve pages, including the arbitration clause. Won also received from

---

[2] Under a provision titled "Miscellaneous," another integration clause in the employment agreement states: "This Agreement, and the Attachments hereto, sets [*sic*] forth the terms of your employment with [Vault] and constitutes the entire agreement between and among the parties hereto with respect to the subject matter hereof, and supersedes in their entirety all prior negotiations and agreements with respect to such subject matter, whether written or oral."

[3] The Plan's arbitration provision states: "Any dispute or claim concerning any Stock Awards granted (or not granted) pursuant to the Plan or any disputes or claims relating to or arising out of the Plan shall be fully, finally and exclusively resolved by binding and confidential arbitration conducted pursuant to the rules of Judicial Arbitration and Mediation Services, Inc. ("JAMS") in the County of San Diego, California. In addition to any other relief, the arbitrator may award to the prevailing party recovery of its attorneys' fees and costs. By accepting a Stock Award, Participants and [Vault] waive their respective rights to have any such disputes or claims tried by a judge or jury."

[4] The arbitration provision in the stock option agreement states: "Any dispute or claim concerning the Option Agreement or the Plan or any disputes or claims relating to or arising out of the Option Agreement or the Plan shall be fully, finally and exclusively resolved by binding and confidential arbitration conducted pursuant to the rules of Judicial Arbitration and Mediation Services, Inc. ("JAMS") in San Diego County, California. In addition to any other relief, the arbitrator may award to the prevailing party recovery of its attorneys' fees and costs. By executing the Option Agreement, [Vault] and Optionee waive their respective rights to have any such disputes or claims tried by a judge or jury."

Vault an unexecuted stock option grant notice that includes an acknowledgment he had received copies of the Plan and the stock option agreement.[5]

In October 2014, Won left his employment at Vault. Subsequently, Won exercised his option of purchasing 700,000 Vault shares for $70,000, claiming that although he disputed the terms of the purchase, he nevertheless proceeded with the purchase in order to obtain at least a part of the equity that appellants promised him.

In January 2015, Won sued appellants, asserting causes of action for (1) fraudulent inducement to enter into the employment agreement, (2) fraudulent misrepresentation regarding the terms of Won's promised equity stake in Vault, (3) fraudulent misrepresentation regarding the exercise price of his shares, (4) negligent misrepresentation regarding the terms of Won's promised equity stake in Vault, (5) breach of Won's written employment agreement promising Won stock options on certain terms, (6) failure to pay timely wages, (7) failure to reimburse expenses, (8) unfair and unlawful business practices under Business and Professions Code section 17200, and (9) declaratory relief.

---

[5]    The stock option grant notice states: "The undersigned Optionee acknowledges receipt of, and understands and agrees to, this Stock Option Grant Notice, the Option Agreement, and the Plan. Further, by their signatures below, [Vault] and the Optionee agree that the option is governed by this Grant Notice and by the Provisions of the Plan and Option Agreement, both of which are attached to and made a part of this Grant Notice. Optionee acknowledges receipt of copies of the Plan and the Option Agreement, represents that the Optionee has read and is familiar with their provisions, and hereby accepts the Option subject to all of their terms and conditions. Optionee further acknowledges that, as of the Date of Grant, this Grant Notice, the Option Agreement and the Plan set forth the entire understanding between Optionee and [Vault] regarding the acquisition of stock in [Vault] and supersede all prior oral and written agreements on that subject, with the exception of options previously granted under the Plan."

Won alleged in the complaint that he had signed the employment agreement in reliance on Young's representation that Won would receive a 10 percent equity share in Vault; however, he did not receive all of the shares to which he is entitled. Won further alleged in his complaint that he was entitled to additional benefits, including (1) monies owed on his final pay check; (2) a correction of his vacation time to avoid adverse tax consequences; (3) reimbursement for health insurance premiums; and (4) "American Express 'cash cards' promised." Won claimed in his declaration that he "forfeited over $606,000 over the four years [he] was employed at Vault."

Vault moved to compel arbitration, conceding that Won "never expressly pleads a breach of any of the Plan Documents," but nonetheless contending that Won's "pleading makes it quite transparent that this dispute falls within the scope of the arbitration provisions in the Plan Documents."

Won opposed the motion, arguing that he obtained the documents containing the arbitration provisions long after his employment had commenced, but he never acknowledged or agreed to them during his employment, thus rendering their arbitration provisions invalid and unenforceable. Won further contended the arbitration provisions are procedurally and substantively unconscionable, and thus unenforceable. He asked at a minimum that the nonarbitrable claims be severed and adjudicated in court.

The trial court denied Vault's motion to compel arbitration on grounds that the employment agreement did not include an arbitration clause and did not incorporate by

6

reference the Plan or the stock option agreement. Given its ruling, the court did not reach the issue of unconscionability.[6]

DISCUSSION

Appellants contend the court erred in finding there was no agreement to arbitrate because Won was bound by the arbitration provisions contained in the Plan and Stock Option Agreement. Appellants add: "Won reviewed each of the Plan Documents prior to exercising his stock options. . . . Won chose to accept the terms of the Plan documents when he signed the Notice of Exercise and three (3) Grant Notices redeeming his stock options. Won was notified that his options were being exercised according to the written terms of the Plan Documents."

I. *Applicable Law*

In California, "[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate." (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420; see *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th

---

[6]    The parties agree that the trial court erred by stating in its final order: "It appears to the Court that the only location in which an arbitration provision is found is in the Bylaws. As stated, the Bylaws are not agreement." In fact, as noted, the Plan and the stock option agreement both contain arbitration provisions. Although the court erred by not altering this aspect of its final ruling, it was brought to the court's attention at the hearing on the tentative ruling, and the court implicitly acknowledged the correction, stating: "Alright. I have to tell you, based on the timing of the presentation of the arbitration agreement . . . that it was not before [Won] when he went to work, and that's . . . the relevant period from my way of looking at things. And the fact that at some later date they determined that they would give him paperwork indicating there's an arbitration agreement it can't bind him after the fact." In light of the totality of the circumstances, the trial court's clerical error does not alter our analysis.

7

951, 972-973.) Generally, an arbitration agreement must be memorialized in writing. (*Fagelbaum & Heller LLP v. Smylie* (2009) 174 Cal.App.4th 1351, 1363.) The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) " ' "An essential element of any contract is the consent of the parties, or mutual assent." [Citation.] [Citation.] Further, the consent of the parties to a contract must be communicated by each party to the other. [Citation.] "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." ' " (*Esparza v. Sand & Sea, Inc.* (Aug. 22, 2016, No. B268420) 2 Cal.App.5th 781, 788 [2016 Cal. App. LEXIS 705].)

"We review de novo a trial court's determination of the validity of an agreement to arbitrate when the evidence presented to the trial court was undisputed. [Citation.] We review under the substantial evidence standard the trial court's resolution of disputed facts." (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567.) Here, our review is de novo because we are called upon to evaluate the legal significance of documents. (Accord, *Flores v. Axxis Network & Telecommunications, Inc.* (2009) 173 Cal.App.4th 802, 805 [" ' "We have no need to defer, because we can ourselves conduct the same analysis," which "involves a purely legal question or a predominantly legal mixed question." ' "].)

8

In *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632 (*Chan*), as a condition of employment, a securities broker was required to execute a form stating that she must register with and submit the document to the New York Stock Exchange (NYSE) and other similar organizations, and abide by the rules and regulations of any organization to which she submitted the document. The NYSE had a rule governing arbitration of any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of the registered representative by and with such a party. (*Id.* at pp. 635-636.) Following the employee's termination, she sued her employer, who moved to compel arbitration, relying on the NYSE's arbitration clause. The court of appeal affirmed an order denying the motion to compel arbitration, concluding the NYSE rule was not properly incorporated by reference into the employee's employment agreement: " '[A] contract may validly include the provisions of a document not physically a part of the basic contract . . . . "It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document. [Citations.] *But each case must turn on its facts.* [Citation.] *For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.*" ' " (*Chan,* at p. 641.)

Likewise, in *Adajar v. RWR Homes, Inc.* (2008) 160 Cal.App.4th 563, a construction defect case, the home builder moved to compel arbitration of the

9

homeowners' lawsuit based on an arbitration agreement in a separate home buyers warranty document. (*Id.* at p. 566.) This court relied on *Chan, supra,* 178 Cal.App.3d 632, and concluded: "The applications the plaintiffs signed here, however, did not incorporate by reference the terms of arbitration clauses included in the subsequently issued 2001 or 2002 warranty booklet. Rather, the applications provided that by signing the forms, homeowners acknowledged they had 'viewed and received the video "Warranty Teamwork: You, Your Builder & HBW," you have read a sample copy of the Warranty Booklet, and CONSENT TO THE TERMS OF THESE DOCUMENTS INCLUDING THE BINDING ARBITRATION PROVISION *contained therein*.' " (*Adajar,* at pp. 569, 571.) We further concluded that because the home builder had not attached copies of the separate arbitration agreement to its motion to compel arbitration, no evidence of the arbitration agreement existed in the record. (*Id.* at p. 571.)

## II. *Analysis*

On this record, we conclude that Won did not agree to arbitrate his claims. The employment agreement not only did not include an arbitration agreement, it also failed to specify how the parties would resolve their disputes. Moreover, the employment agreement did not properly incorporate by reference any document containing an arbitration agreement. The employment agreement's references to the Plan and the stock option agreement do not suffice to show that Won agreed to arbitration.

Vault has not shown that it complied with the requirement that an arbitration agreement included in a separate document " ' "*must be called to the attention of the other party and he must consent thereto*." ' " (*Chan, supra,* 178 Cal.App.3d at p. 571; accord,

10

*Sparks v. Vista Del Mar Child and Family Services* (2012) 207 Cal.App.4th 1511, 1522 ["To support a conclusion that an employee has relinquished his or her right to assert an employment-related claim in court, there must be more than a boilerplate arbitration clause buried in a lengthy employee handbook given to new employees. At a minimum, there should be a specific reference to the duty to arbitrate employment-related disputes in the acknowledgment of receipt form signed by the employee at commencement of employment"], abrogated on other grounds by *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 390.) Here, Won signed no such specific agreement to arbitrate disputes when he signed his employment agreement.[7]

Our conclusion is bolstered by the fact that Vault's employment agreement included the attached Inventions Agreement that Won was required to execute prior to his hire, thus demonstrating that Vault knew how to properly incorporate a document by reference. Moreover, the employment agreement twice underscored the parties' understanding that their entire agreement is contained in the employment agreement and the Inventions Agreement. Thus the parties did not include the Plan and stock option agreements as part of the employment agreement.

---

[7] As for the issue of whether Won had actual notice, Won stated in his declaration that despite the fact the documents containing the arbitration were dated a day earlier than his hire date, he did not receive those documents until six months after he started working at Vault. Further, one of the documents was missing several pages, including the one containing the arbitration clause. He claims he did not receive a complete copy of that document until around the time of his resignation.

11

An important aspect of this case is the recognition that "the right to select a judicial forum, vis-a-vis arbitration, is a ' "substantial right," ' not lightly to be deemed waived."  (*Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 31.)  The United States Supreme Court in *State Farm Fire & Casualty Co. v. Tashire* (1967) 386 U.S. 523, 536 reiterated that " 'substantial rights [include] the right to choose the forum in which to establish [one's] claims, subject to generally applicable rules of jurisdiction, venue, service of process, removal, and change of venue.' "  (*Chan, supra,* 178 Cal.App.3d at pp. 642-643.)

In light of our conclusion, we need not address the parties' arguments regarding whether the arbitration agreements in the Plan and the stock option agreement are unconscionable.

## DISPOSITION

The order is affirmed.  Jey Won is awarded costs on appeal.


O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.

12