Filed 4/28/23  Birrueta v. UMA Enterprises CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LEONIDES BIRRUETA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>UMA ENTERPRISES, INC.<br><br>    Defendant and Appellant. | B316309<br><br>(Los Angeles County Super. Ct. No. 20STCV35816) |

APPEAL from an order of the Superior Court of Los Angeles County. Michael P. Linfield, Judge. Affirmed.

CDF Labor Law, Todd R. Wulffson, Nancy N. Lubrano and Brian E. Cole II for Defendant and Appellant.

Employee Justice Legal Group, Kaveh S. Elihu and Sylvia V. Panosian for Plaintiff and Respondent.

_____

Leonides Birrueta (plaintiff) sued his former employer for wrongful termination-related claims. The employer filed two motions to compel arbitration, which the trial court denied. The employer appealed from the order denying the second motion to compel arbitration. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Facts

#### A. Hiring, Employment and Termination

UMA Enterprises, Inc. (UMA), is a nationwide wholesaler and distributor of imported goods. In April 2001, UMA hired plaintiff as a maintenance worker. Plaintiff's sole language is Spanish.

In September 2018, UMA fired plaintiff five days after he suffered a stroke while on the job and was hospitalized. At the time, plaintiff was 75 years old. He was allegedly terminated for failing to request medical leave three days before his hospitalization.

#### B. Arbitration Agreements

The arbitration agreement at issue is a four-page document written in English. The last page is signed "Leonides Birrueta" and is dated August 29, 2014. Immediately above the signature lines, the agreement reads: "BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE CAREFULLY READ THIS AGREEMENT, THAT YOU UNDERSTAND ITS TERMS, AND THAT YOU HAVE ENTERED INTO THIS AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATION BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT."

## II. Procedural Background

### A. Complaint

In September 2020, plaintiff sued UMA for wrongful termination in violation of public policy, denial of sick leave, and discrimination based on the use of sick leave (Lab. Code, §§ 233, 234, 246.5), retaliation for disclosing violations of law (Lab. Code, §§ 1102.5, 1102.6), and retaliation (Lab. Code, § 98.6). Plaintiff requested a jury trial.

### B. First Motion to Compel Arbitration

On December 15, 2020, UMA moved to compel arbitration under the arbitration agreement. Attached to the motion were the arbitration agreement and an unidentified document that apparently was the Spanish version of the agreement. UMA neither referred to nor explained the Spanish version in its motion or accompanying exhibits. Plaintiff opposed the motion.

UMA and plaintiff disputed whether a valid arbitration agreement existed. Supported by the declaration of Larry Woods, its chief financial officer, UMA contended that plaintiff signed—and thereby agreed to—the agreement on August 29, 2014. Plaintiff, on the other hand, contended there was no evidence he signed the agreement and, as a Spanish speaker, understood its terms. Nor did UMA show he received and agreed to the Spanish version, which was unsigned and undated. And unlike the English version, it did not include an opt-out provision.

Following full briefing, the trial court held a hearing on the motion. The court excluded Woods's statements authenticating the arbitration agreement as lacking personal knowledge and plaintiff's declaration in its entirety as unreliable.[1]

---

[1] The trial court sustained UMA's objection there was no evidence that plaintiff (who did not speak English) knew the

At the conclusion of the hearing, the trial court denied the motion to compel. The court found Woods failed to sufficiently authenticate the English version as having been signed by plaintiff, and the Spanish version was not signed, dated, or certified as being identical to the English version by a qualified Spanish interpreter. Moreover, "a casual perusal" revealed the two versions were not identical, the English version has one more numbered section than the Spanish version. Woods also failed to attest to having personal knowledge of "the identity and mode of preparation" of documents in plaintiff's personnel file.

The court ruled UMA "failed to prove by any admissible evidence, let alone a preponderance of the evidence, that there exists an enforceable signed arbitration agreement between the parties."

C.   **Second Motion to Compel Arbitration**

On September 23, 2021, UMA again moved to compel arbitration, resurrecting the dispute whether a valid arbitration agreement existed. Plaintiff opposed the motion.

UMA argued it cured the defects in the authentication of the arbitration agreement because plaintiff admitted to having signed the agreement in his August 24, 2021 deposition. UMA also submitted a more detailed Woods's declaration. The motion did not include the Spanish version as an exhibit. In opposition, plaintiff argued UMA still failed to authenticate the agreement. Nor was there mutual consent given plaintiff's deposition testimony and declaration that he neither speaks English nor understands any documents shown to him in English.

---

contents of the declaration he was signing because it was in English.

4

Following another round of full briefing and a hearing on October 20, 2021, the trial court denied the second motion to compel. The court excluded most of Woods's declaration as lacking foundation[2] and admitted plaintiff's declaration in its entirety[3] before adopting its prior order. The court found the grounds for the two motions to compel were "virtually the same," such that "the principles underlying res judicata apply equally well here," even though the doctrine per se would not apply. The court further found that even if UMA's motion were meritorious, ordering arbitration after nine months of ongoing discovery would result in an inordinate delay.

### D.      Appeal

UMA timely appealed from the trial court's order.[4]

## DISCUSSION

## I.      Applicable Law and Standard of Review

A motion to compel arbitration is essentially an equitable proceeding to require specific performance of a contract. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14

---

[2] Specifically, the trial court sustained plaintiff's objections to Woods's declaration that employees were presented with the arbitration agreement and asked to return a signed copy if they wished, plaintiff returned a signed copy, which was placed in his personnel file, and plaintiff never revoked, opted-out, or requested a copy of the agreement.

[3] This time plaintiff's declaration was translated from English to Spanish for his review, and plaintiff confirmed the accuracy of the translation and its contents.

[4] Code of Civil Procedure section 1294, subdivision (a) authorizes an immediate appeal.

5

Cal.4th 394, 411.)  The trial court must determine whether an agreement to arbitrate exists.  (*Caballero v. Premier Care Simi Valley LLC* (2021) 69 Cal.App.5th 512, 517.)  General contract law applies to determine whether the parties formed an enforceable agreement to arbitrate.  (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59; *Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 591 [same rules of contract construction apply to arbitration agreements].)

Where, as here, the trial court's ruling turns on questions of fact, the substantial evidence standard applies, including deferring to the court's credibility findings.  (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 166; *Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406.)  And where, as here, the court finds the moving party failed to carry its burden of proof, the question for the reviewing court is whether those findings are "erroneous as a matter of law."  (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066.)

## II.    UMA Failed to Establish the Existence of an Arbitration Agreement

Preliminarily, we note while the trial court first ruled, and later confirmed, that UMA failed to produce admissible evidence of an enforceable arbitration agreement, it did not state the rule of contract construction or legal theory the missing evidence was necessary to prove.  In any event, " ' "[w]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record." ' "  (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 686; accord, *Adajar v. RWR Homes, Inc.* (2008) 160 Cal.App.4th 563, 571, fn. 3; *Davey v.*

6

*Southern Pacific Co.* (1897) 116 Cal. 325, 329.) Implicit in the court's ruling is UMA's failure to show plaintiff understood and consented to the arbitration agreement. We conclude substantial evidence supports the denial of the motion because UMA failed to establish the existence of mutual consent.

### A.     Mutual Consent

An enforceable contract requires the parties' consent. (*Caballero v. Premier Care Simi Valley LLC, supra,* 69 Cal.App.5th at p. 518.) Such consent must be mutual, freely given, and communicated by each party to the other. (Civ. Code, § 1565.) For the consent to be mutual, the parties must "all agree upon the same thing in the same sense." (Civ. Code, §1580.) In determining whether there was mutual consent to contract, the trial court does not consider the parties' subjective intention or states of mind. To determine whether there was mutual consent for a contract, the court does not consider the parties' subjective intentions or unexpressed understandings. (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208.) Rather, the court applies an objective standard based on the parties' outward manifestations or expressions, i.e., " 'the reasonable meaning of their words and acts.' " (*Ibid.*) When there is no evidence establishing mutual consent to contract, no contract has been formed. (*Ibid.*)

" 'No law requires that parties dealing at arm's length have a duty to explain to each other the terms of a written contract.' " (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674.) Ordinarily, a party who signs a document, which on its face is a contract, is deemed to assent to all its terms. (*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049.) In other words, a party's

signature is an objective manifestation of express consent. (*Caballero v. Premier Care Simi Valley LLC, supra,* 69 Cal.App.5th at p. 518; *Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1027.)  Further, a party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.  (*Ramos v. Westlake Services LLC, supra,* 242 Cal.App.4th at p. 686.)  A party who cannot read the contract should have it read or explained to him or her.  (*Ibid.*)

However, there is a relevant exception:  "[I]f the one who signs the instrument is unaware of the contractual provisions, he cannot be said to have agreed to them.  Thus, '[a]n exception to [the] general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the recipient.  In such a case, no contract is formed with respect to the undisclosed term.' " (*Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 702.)

**B.** **UMA Failed to Carry Its Burden to Establish Mutual Consent**

Here, UMA failed to show as a matter of law that plaintiff consented to the arbitration agreement, having made no showing that plaintiff received the arbitration agreement.  UMA introduced no (admissible) evidence that anyone handed or mailed the arbitration agreement to plaintiff, explained what the document was, and gave plaintiff the opportunity to review the document, ask any questions or consult an attorney before signing it.

Further, in his declaration, plaintiff averred he did not recall seeing or signing the arbitration agreement, and he never received any UMA paperwork to take home for review.  Nor did he understand what an arbitration agreement was or was able to

consult an attorney about any UMA documents. Plaintiff averred "sometimes" his supervisors would give him "documents in English" that he "was required to sign." When plaintiff asked "what the documents mean," his supervisors would "always" respond that " 'it's nothing' " and that " 'it will not harm or damage you' or comments to that effect." (*Fleming v. Oliphant Financial, LLC* (2023) 88 Cal.App.5th 13, 23, 25 [holding the defendant could not show consent to arbitrate where the evidence did not show defendant provided plaintiff the arbitration agreement]; *Chambers v. Crown Asset Management, LLC, supra,* 71 Cal.App.5th at p. 602 [same].)

UMA's chief counterargument is because plaintiff acknowledged signing the last page of the agreement he is deemed to have consented to its terms. Of course, this argument rests on the assumption the agreement was provided to plaintiff.

As discussed, ordinarily, plaintiff's signature on the arbitration agreement would constitute an objective manifestation of his intent to enter into an agreement, despite his inability to understand English and his failure to have someone translate the document for him. In this case, however, it is uncontroverted that UMA knew plaintiff could not read, write, or speak English during his employment. Nor did plaintiff have a reasonable opportunity to obtain a translation or have an attorney explain the document. While UMA was not required to translate the terms of the agreement for plaintiff, once UMA knew plaintiff did not understand the agreement, UMA could not reasonably rely on his signature alone as a manifestation of assent to its terms. Notably, UMA did not furnish plaintiff a copy of the agreement for his own records, which would have

9

allowed him to obtain a translation and subsequently withdraw his consent.

Interestingly, UMA does not mention plaintiff's inability to speak English until its reply brief. UMA relies on *Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158 to argue plaintiff's lack of English proficiency does not enable him to claim he did not consent to an agreement he signed. However, that case is distinguishable. In *Randas*, the Court of Appeal enforced a liability waiver that the plaintiff had signed, even though she could not read English. (*Id.* at p. 160.) The court noted the release stated she had read it, and the other contracting party had no reason to suspect the plaintiff did not or could not read the release that she signed. (*Id.* at p. 163.) In contrast, in the case before us, the evidence established UMA knew plaintiff's sole language was Spanish. UMA cannot credibly claim that plaintiff's signature manifested his consent to the terms of the agreement, when UMA was fully aware plaintiff did not understand what he was signing.

In sum, the trial court did not err in denying UMA's second motion to compel. Because there was no mutual consent, there was no arbitration agreement to enforce.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed. Respondent Leonides Birrueta is awarded his costs on appeal.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

11