Filed 2/2/21  TriCoast Builders v. Barnhisel CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| TRICOAST BUILDERS, INC., | B298947 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. BC647811 |
| STACY BARNHISEL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge. Affirmed.

Connette Law Office and Michael Connette for Plaintiff and Appellant.

Alston & Bird, Joseph S. Sestay; Law Office of Daniel M. O'Leary and Daniel M. O'Leary for Defendants and Respondents.

# INTRODUCTION

This is an appeal from a judgment confirming an arbitration award in favor of defendants and respondents Stacy Barnhisel and Joshua Haber (homeowners). After a fire significantly damaged their home, the homeowners retained TriCoast Builders, Inc. (TriCoast) to rebuild it. The final home improvement agreement governing the project contained a broad arbitration provision. When TriCoast sued the homeowners concerning the project, the homeowners filed a petition to stay the litigation and compel arbitration which the trial court granted. The arbitrator found that the homeowners owed TriCoast a few thousand dollars under the contract but that amount was offset by more than $130,000 owed by TriCoast to the homeowners relating to construction defects and work performed by unlicensed contractors. The court affirmed the arbitration award.

Arbitration awards are entitled to substantial deference by our courts and are generally final. TriCoast, however, challenges the court's initial order sending the case to arbitration as well as the court's order denying its request to vacate the arbitration award. TriCoast attempts to shoehorn myriad arguments into the few narrow grounds upon which we may review an arbitrator's award. But as we see no merit in any of the arguments asserted, we affirm the judgment in favor of the homeowners.

## FACTS AND PROCEDURAL BACKGROUND

1. **The homeowners retain TriCoast to secure their property after a fire.**

On January 1, 2015, the homeowners' Los Angeles residence caught fire and suffered significant damage. That day,

a representative from TriCoast approached the homeowners offering emergency services, i.e., to board up and secure the property. The homeowners and TriCoast signed a single-page work authorization agreement (work authorization) to that effect. The work authorization also included a notice to the homeowners' insurer and lender by which the homeowners instructed those entities to send payment for services rendered directly to TriCoast.

2. **The homeowners retain TriCoast to rebuild their home. The home improvement contract contains an arbitration clause.**

Due to the extent of the fire damage, large portions of the residence needed to be reconstructed. The homeowners retained TriCoast to rebuild their home as reflected in the final home improvement agreement dated May 4, 2015 (May 4 agreement.) The agreed-upon cost of the rebuild was $239,501.62. Largely as a result of design changes requested by the homeowners, the cost later increased by $191,768.50.

As pertinent here, the May 4 agreement includes a broad arbitration provision (arbitration provision):

"ARBITRATION OF DISPUTES. Any controversy or claim arising out of or relating to this agreement, or breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Owner(s) agrees that the proper venue for the action shall be in Los Angeles County. NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE A DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN

3

THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' [PROVISION], YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE BUSINESS AND PROFESSIONS CODE OR OTHER APPLICABLE LAWS. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. [']WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.['] "

The arbitration provision was initialed by "JH." Although the contract identifies only "Josh Haber" as the "owner," both Haber and Barnhisel signed the May 4 agreement.

The May 4 agreement also contains an integration clause: "This Agreement is the entire agreement and constitutes a complete integration of all understandings between Owner and Contractor, and supersedes all prior agreements, whether written or oral."

3.    **TriCoast sues the homeowners for breach of contract; the homeowners file a petition to compel arbitration.**

At some point, the relationship between the homeowners and TriCoast soured. In January 2017, TriCoast filed the present lawsuit against the homeowners, their insurer, and their

4

mortgage lender.[1] The complaint contains four causes of action styled as breach of obligation to pay money, breach of written contract, foreclosure of mechanic's lien, and reasonable value of labor and materials furnished. TriCoast sought to recover $128,187.34 for work it had performed at the homeowners' residence but for which it had not been paid.[2]

Citing the May 4 agreement's arbitration provision, the homeowners petitioned the court to stay the action and compel arbitration of their disputes with TriCoast. TriCoast opposed the petition, arguing that the work authorization, which did not contain an arbitration provision, was a separate agreement and was not superseded by the May 4 agreement. Further, TriCoast asserted that the arbitration provision contained in the May 4 agreement was invalid because only Haber—and neither Barnhisel nor TriCoast—had initialed that provision.

4.     **The court grants the homeowners' petition and the case proceeds to arbitration.**

The court granted the petition to compel arbitration. Specifically, the court noted that the May 4 agreement contained an integration clause and was therefore controlling over any earlier, related agreements such as the work authorization. Regarding the fact that only Haber initialed the arbitration provision, the court found that under the circumstances it was not necessary for TriCoast—the drafter of the May 4 agreement—

---

[1] Neither the insurer nor the lender is involved in the present appeal.

[2] The mechanic's lien recorded against the property, however, stated that $201,046.65 was due to TriCoast.

to separately initial the arbitration provision in order for the provision to be enforceable against it.

The arbitrator heard testimony and received documentary evidence over the course of five days in August and September 2018. TriCoast sought to recover the damages set forth in its complaint. The homeowners sought damages against TriCoast for overpayments and/or payments made to TriCoast relating to work performed by unlicensed subcontractors, as well as damages relating to defective construction.

## 5. The arbitrator finds that TriCoast owes the homeowners more than $130,000.

As an initial matter, the arbitrator found that he had jurisdiction over all disputes between the parties relating to the work authorization and the May 4 agreement. The arbitrator also found that "the Work Authorization provisions do not affect the liability of either party or the damages awarded." The arbitrator then determined that the homeowners owed TriCoast $4,826.77 for work performed under the May 4 agreement. That amount was offset, however, by $55,711 the homeowners paid TriCoast for work performed by unlicensed subcontractors and by $75,056.42 for expenses relating to the repair or correction of defective construction. The total arbitration award in favor of the homeowners was $125,940 in damages and $8,749.99 in costs.

## 6. The court confirms the arbitration award. TriCoast appeals.

The homeowners brought a petition to confirm the arbitration award. TriCoast opposed the homeowners' petition and brought a petition to vacate the arbitration award. TriCoast argued that the arbitrator exceeded his powers by making a

determination as to the work authorization, the arbitrator lacked jurisdiction because the May 4 agreement lacked a meeting of the minds, the arbitrator lacked jurisdiction because neither of the homeowners initialed the arbitration provision in the May 4 agreement, and the arbitrator improperly denied TriCoast's request for a continuance of the arbitration proceedings. The court rejected those arguments, confirmed the arbitration award, and denied TriCoast's petition to vacate the award.

The court entered judgment on the arbitration award on May 2, 2019. This timely appeal followed.

## DISCUSSION

TriCoast challenges the court's order granting the homeowner's petition to compel arbitration and the court's order denying TriCoast's request to vacate the arbitration award. None of its arguments have merit.

1. **The court properly granted the homeowners' petition to compel arbitration.**

    1.1. **Legal Principles**

    "The principles governing petitions to compel arbitration are well established. Public policy favors contractual arbitration as a means of resolving disputes. (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 342.) But that policy ' " 'does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration.' " ' [Citation.]" (*Espejo v.*

7

*Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1057.)

Code of Civil Procedure section 1281.2[3] provides in relevant part that "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that ... [¶] ... [g]rounds exist for rescission of the agreement." A petition to compel arbitration under section 1281.2 is essentially a suit in equity seeking specific performance of an arbitration agreement. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 347.)

The party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*).) Courts use general principles of contract law to determine whether the parties have entered into a valid and binding arbitration agreement. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).) Where, as here, the evidence is not in conflict, we review the trial court's ruling on a petition to

---

[3] All undesignated statutory references are to the Code of Civil Procedure.

compel arbitration de novo. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707.)

### 1.2. The arbitration provision is enforceable against TriCoast.

TriCoast argues the arbitration provision should not be enforced against it because it did not initial the provision when it executed the contract. We disagree.

"Generally, an arbitration agreement must be memorialized in writing. (*Fagelbaum & Heller LLP v. Smylie* (2009) 174 Cal.App.4th 1351, 1363.) A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement. A signed agreement is not necessary, however, and a party's acceptance may be implied in fact (e.g., *Craig*[ *v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416,] 420 [employee's continued employment constitutes acceptance of an arbitration agreement proposed by the employer]) or be effectuated by delegated consent (e.g., *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 852–854 (*Ruiz*)).)" (*Pinnacle, supra*, 55 Cal.4th at p. 236.)

As noted *ante*, the May 4 agreement contains an unambiguous arbitration provision. TriCoast does not argue otherwise. On its face, the May 4 agreement prepared by TriCoast does not suggest that TriCoast was expected or required to initial the arbitration provision specifically. Indeed, it included only one small line indicating that initials were required at the end of the notice portion of the arbitration provision. Nevertheless, TriCoast urges that the arbitration provision contained in the May 4 agreement is not enforceable *against it* because no representative of TriCoast separately initialed the arbitration provision. TriCoast is wrong.

9

First, as the homeowners observe, Business and Professions Code section 7191 sets forth the requirements for arbitration provisions contained in a home improvement contract for work on residential properties with fewer than four units. Subdivision (b) of that section does suggest that more than one party could initial an arbitration provision, as it references an area for "the *parties* to indicate their assent or nonassent to the arbitration provision." (Italics added.) But even if that subdivision were construed to require a contractor's initials, as TriCoast would have it, any failure in that respect would not render the provision unenforceable *against TriCoast* because subdivision (c) states, "A provision for arbitration of a dispute between a principal in a contract for work on a residential property with four or fewer units that does not comply with this section may not be enforceable against any person *other than the licensee,*" i.e., the contractor. (Italics added.) TriCoast does not address this point.

Instead, TriCoast cites three cases in support of its position that the arbitration provision cannot be enforced against it. First, TriCoast cites *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, for the well-established proposition that a party can generally be compelled to submit a dispute to arbitration where the party has so agreed in writing. TriCoast signed the May 4 agreement. Otherwise, the case is of no use to TriCoast because the question presented there—whether the surety in a performance bond is bound by an agreement to arbitrate contained in a construction contract or subcontract to which the surety was not a party but which is incorporated into the bond by reference—is not remotely relevant to our inquiry.

10

Second, quoting *Banner Entertainment Inc v. Superior Court* (1998) 62 Cal.App.4th 348, 359 (*Banner*), TriCoast explains that mutual consent to a definite proposition is essential to the formation of a contract. Again, this is a well-established proposition relating to contract formation. But in *Banner*, the question was whether an arbitration provision contained in an unsigned draft agreement could be used to require the parties to arbitrate their dispute, even though they never signed any written agreement and, at best, only agreed orally on some issues addressed in the draft agreements. In the absence of any evidence that the parties orally discussed and agreed to arbitration, the court held that their dispute was not arbitrable. *Banner* sheds no light on the present case, however, in which the parties undisputedly signed a contract that contains an unambiguous arbitration provision.

Finally, TriCoast hangs its hat on *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83 (*Marcus*), a case discussing the arbitrability of claims arising out of a form real estate contract that contained an arbitration provision. The portion of the form contract containing the arbitration provision called for the initials of both the buyers and the sellers. The buyers initialed the arbitration provision in their purchase offer, but the sellers did not initial the provision when they accepted the offer. The court concluded that the dispute was not arbitrable and explained its reasoning as follows:

"[T]he actual 'ARBITRATION OF DISPUTES' clause states: 'If a controversy arises with respect to the subject matter of this Purchase Agreement or the transaction contemplated herein ... *Buyer, Seller and Agent agree* that such controversy shall be settled by final, binding arbitration.' (Italics added.)

11

Although buyers assented to this provision, sellers did not. Applying general California contract law to this fact pattern, we conclude that although the buyers *offered* to include the arbitration provision as part of the purchase agreement, the sellers did not accept that offer. The terms of an offer must be ' "met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract ...; and a qualified acceptance amounts to a new proposal or counteroffer *putting an end to the original offer ... .*" ' [Citation.] None of the subsequent counteroffers between the buyer and seller mentioned the arbitration provision. Thus, 'Buyer, Seller and Agent' did not agree to submit controversies to binding arbitration, as the arbitration clause requires." (*Marcus, supra*, 68 Cal.App.4th at p. 89.)

*Marcus* does not hold, as TriCoast suggests, that all parties to a contract must initial an arbitration provision in order for it to be enforceable. Instead, it holds that an offer to arbitrate future disputes must be accepted by the offeree to be enforceable. Applying the court's reasoning in *Marcus* to the case before us leads us to conclude, as the trial court did, that the parties agreed to arbitrate the present dispute. The offer—the initial May 4 agreement sent from TriCoast to the homeowners—included an offer to arbitrate future disputes arising out of the contract. The homeowners accepted the offer generally by signing the May 4 agreement and accepted the arbitration provision specifically by initialing the provision as required.[4] *Marcus* is distinguishable on

[4] TriCoast initially conceded that Haber had initialed the arbitration provision but asserted the provision was unenforceable against it because Barnhisel had not initialed it. It now complains that there is

12

this critical point and supports, rather than undermines, the court's ruling.[5]

### 1.3. TriCoast fails to explain why the work authorization is relevant.

TriCoast also argues that "even if the May 4 agreement is valid, it does not supersede the work authorization[,]" which does not contain an arbitration provision. In a related argument, TriCoast asserts that "even if the May 4 agreement is valid, the work authorization is not subject to the arbitration clause of the May 4 agreement." But we are left to wonder why it matters. As noted, the work authorization is a single-page form contract authorizing TriCoast to secure the homeowners' residence and personal property after a devastating fire. The complaint does not allege that the homeowners breached that agreement, nor does it purport to seek damages relating to work performed under it. Moreover, the arbitrator found "that the terms of the Work Authorization have no bearing on the outcome of his decision or this award as the Work Authorization provisions do not affect the liability of either party or the damages awarded herein below."

In short, TriCoast fails to present a cognizable claim supported by legal analysis. Accordingly, we disregard it. (*City of*

---

no evidence that either of the homeowners initialed the arbitration provision. The absence of evidence cuts against TriCoast however, as TriCoast had the burden to establish any defense to the homeowners' petition to compel arbitration. (*Engalla, supra*, 15 Cal.4th at p. 972.)

[5] For the reasons stated, we also reject TriCoast's related argument that the court should have vacated the arbitration award because TriCoast did not initial the arbitration provision.

13

*Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["[W]e may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt."].)

**2.    The court properly denied TriCoast's petition to vacate the arbitration award.**

In light of the strong public policy in favor of arbitration, courts generally do not review arbitration awards for factual or legal errors. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*); *Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1086–1087 (*Soni*).) Accordingly, arbitration awards are usually final. (*Moncharsh,* at p. 10.) Section 1286.2 sets forth the limited exceptions to this general rule and TriCoast relies on two of these.

**2.1.    The arbitrator did not exceed his authority.**

Section 1286.2, subdivision (a)(4), requires a court to vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." " '[W]hether the arbitrator exceeded his or her powers ..., and thus whether the award should have been vacated on that basis, is reviewed on appeal de novo.' [Citation.]" (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33.) Nevertheless, in evaluating whether an arbitrator has exceeded his or her powers, we afford substantial deference to the arbitrator's determination of his or her contractual authority. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 372; *Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 541.) To the extent

14

the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test. (*Soni, supra*, 42 Cal.App.5th at p. 1087.)

TriCoast claims the arbitrator exceeded his authority in several respects. First, TriCoast argues that the "arbitrator exceeded his authority to make a determination as to the work authorization." But as we have said, TriCoast has not explained how the work authorization is relevant and, more particularly, in what way it was prejudiced by any ruling or order relating to the work authorization. Accordingly, we reject this argument for the reasons set forth *ante*.

Second, at several points in its briefs, TriCoast appears to argue that the court should have vacated the arbitration award because the May 4 agreement is illegal and/or unenforceable in its entirety.[6] One heading states, for example, that the "arbitrator exceeded [his] authority as the May 4 agreement was illegal and against legislated public policy." Generally, TriCoast claims that no "meeting of the minds" occurred—and therefore no contract was formed—because the May 4 agreement purportedly did not attach a scope of work.[7] TriCoast cites Business and

---

[6] The irony is not lost on us. Although TriCoast now contends that no contract was ever formed, it drafted the May 4 agreement, performed many of its obligations under it, was paid substantial amounts for that work, and sued the homeowners for breach of the May 4 agreement.

[7] In support of TriCoast's motion to vacate the arbitration award, TriCoast's attorney submitted a declaration in which he purports to describe various aspects of the arbitration proceedings. Among other things, the attorney claims that the homeowners said during the arbitration that they did not receive a "scope of work" as part of the May 4 agreement.

Professions Code, section 7159, subdivision (d)(7), which states in relevant part, "(d) A home improvement contract and any changes to the contract shall be in writing and signed by the parties to the contract prior to the commencement of work covered by the contract or an applicable change order and, … shall include … the following: [¶] … [¶] (7) The heading: 'Description of the Project and Description of the Significant Materials to be Used and Equipment to be Installed,' followed by a description of the project and a description of the significant materials to be used and equipment to be installed."

It is true, as TriCoast argues, that an arbitration award may be vacated if the arbitrator enforces a contract that is illegal. In *Loving & Evans v. Blick* (1949) 33 Cal.2d 603 (*Loving*), cited by TriCoast, the Supreme Court did just that. In a contractual dispute between a homeowner and an unlicensed contractor, the arbitrator issued an award in favor of the unlicensed contractor. The trial court confirmed the award, notwithstanding the undisputed evidence that the contractor was unlicensed and the applicable statutory provision stating that " 'No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract.' " (*Id.* at p. 607.)

The Supreme Court reversed. The court summarized the applicable law: "Section 1281 of the Code of Civil Procedure, providing for submission to arbitration of 'any controversy … which arises out of a contract,' does not contemplate that the

16

parties may provide for the arbitration of controversies arising out of contracts which are expressly declared by law to be illegal and against the public policy of the state. So it is generally held that 'a claim arising out of an illegal transaction is not a proper subject matter for submission to arbitration, and that an award springing out of an illegal contract, which no court can enforce, cannot stand on any higher ground than the contract itself.' " (*Loving, supra,* 33 Cal.2d at pp. 609–610.) Because the contractor was unlicensed and was therefore unable to enforce the contract against the homeowners, the court held the arbitrator exceeded his authority by enforcing a contract which was "illegal and void." (*Id.* at p. 614.)

Analogizing to *Loving,* and citing Business and Professions Code, section 7159, subdivision (d)(7), TriCoast argues that the May 4 agreement did not include a scope of work and that "[w]ithout such a scope of work there was no enforceable home improvement agreement." We reject this argument for two reasons. First, questions concerning the validity and enforceability of a contract that is the subject of an arbitration— as opposed to the validity of the agreement to arbitrate the dispute in the first instance—are left to the sound discretion of the arbitrator. (*Moncharsh, supra*, 3 Cal.4th at p. 30 ["[W]hen— as here—the alleged illegality goes to only a portion of the contract (that does not include the arbitration agreement), the entire controversy, including the issue of illegality, remains arbitrable."].)

Moreover, the statutory provision cited by TriCoast does not invalidate or void a home improvement contract. Business and Professions Code section 7159, subdivision (a)(5), states that "[f]ailure by the licensee, their agent or salesperson, or by a

17

person subject to be licensed under this chapter, to provide the specified information, notices, and disclosures in the contract, or to otherwise fail to comply with any provision of this section, is cause for discipline." Thus, according to its own terms, a failure to comply with the cited statute may subject the contractor to *discipline*. There is no indication that a contractor may *avoid* a contract by failing to include a scope of work.

### 2.2. The arbitrator did not deny TriCoast the opportunity to present its case.

Section 1286.2 also requires a court to vacate an arbitration award if "[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor … ." (§1286.2, subd. (a)(5).) "[W]hen, as here, an arbitrator exercises discretion in denying a continuance request, there are two issues to be resolved in vacatur proceedings. First, the trial court must determine whether the arbitrator abused his or her discretion by refusing to postpone the hearing upon sufficient cause being shown. Second, if there was an abuse of discretion, the trial court must determine whether the moving party suffered substantial prejudice as a result. Moreover, on appeal from the trial court's order granting or denying a request to vacate the arbitration award, our review is de novo. In other words, in this case, we must consider whether the *arbitrators* abused their discretion and there was substantial prejudice in denying plaintiff's continuance motion. Only if the arbitrators abused their discretion and there was resulting prejudice could the trial court properly vacate the arbitration award. As noted, in the face of disputed evidentiary matters, we apply the differential substantial evidence test." (*SWAB*

*Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1198.)

As we understand it, TriCoast asked the arbitrator to continue the arbitration so that it could conduct discovery, i.e., request documents from and depose a representative of the homeowners' insurer. Apparently TriCoast believed the homeowners may have submitted to their insurer falsified invoices purporting to be from TriCoast. TriCoast claims it was prejudiced by the arbitrator's denial of its request for a continuance because it was not allowed sufficient time and latitude to conduct discovery on this issue.

We disagree because it is not apparent how TriCoast's allegations, even if proven, could have impacted the arbitration between the homeowners and TriCoast. The issues before the arbitrator related to the value of TriCoast's work, its entitlement to payment from the homeowners, and the harm suffered by the homeowners due to defective construction. The arbitrator relied on the evidence submitted by the parties on those issues. TriCoast has not explained how communications between the homeowners and their insurer—truthful or fraudulent—have any bearing on those issues. Accordingly, we conclude TriCoast failed to establish that it was prejudiced by the arbitrator's denial of its request for a continuance.

## DISPOSITION

The judgment is affirmed. Stacy Barnhisel and Joshua Haber shall recover their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

                                          LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.